# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CC Care, et al.[1], | ) | Case No. 17-32406 |
| | ) | |
| Debtors. | ) | Judge Janet S. Baer |
| | ) | |
| _____ | ) | (Jointly Administered) |

## FINAL ORDER AUTHORIZING DEBTOR TO OBTAIN SECURED POST-PETITION FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE AND ALLOWING ADMINISTRATIVE RENT CLAIM

Upon the motion (the "**Motion**") of the above-captioned debtors and the debtors-in-possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**"), for an order pursuant to section 364 of title 11 of the United States Code, 11 U.S.C. §§101, *et seq.* (the "**Bankruptcy Code**") and Rules 4001(b), 4001(c) and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 4001-2 of the Local Rules for the United States Bankruptcy Court for the Northern District of Illinois (the "**Local Rules**"): (a) authorizing the Debtors, as borrowers, to obtain up to $1,500,000 in post-petition financing (the "**DIP Financing**") to be provided by 25 Capital Investment Holdings, LLC, as lender (the "**DIP Lender**"), pursuant to the terms and conditions of that Loan and Security Agreement, dated as of January 17, 2019 (the "**DIP Agreement**")[2] and the Note dated January 17, 2019 (the "**DIP Note**"), attached as exhibits to such Motion; (b) granting the DIP Lender security interests in and to all of the Debtors' presently owned and after-acquired property to secure the

---

[1] The Debtors in these Chapter 11 Cases are: CC Care, LLC (Case No.: 17-32406), BT Bourbonnais Care, LLC (Case No.: 17-32411), CT Care, LLC (Case No.: 17-32417), FT Care, LLC (Case No.: 17-32423), JT Care, LLC (Case No.: 17-32425), KT Care, LLC (Case No.: 17-32427), SV Care, LLC (Case No.: 17-32430), TN Care, LLC (Case No.: 17-32429), WCT Care, LLC (Case No.: 17-32433). JLM Financial Healthcare, LP (Case No.: 17-32421).

[2] Defined terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the DIP Agreement

731125567

Debtors' obligations in respect of such DIP Financing; (c) seeking a preliminary hearing on the Motion (the "**Preliminary Hearing**") to consider entry of an order authorizing the DIP Financing on an interim basis (the "**Interim Order**"); and (d) requesting that a final hearing (the "**Final Hearing**") be scheduled to consider entry of an order authorizing the DIP Financing on a final basis (the "**Final DIP Order**"); due and sufficient notice of the Motion, the Preliminary Hearing, and the Final Hearing under the circumstances having been given; and the Preliminary Hearing on the Motion having been held before the Court on January 16, 2019 and a Final Hearing having been held before the Court on February 13, 2019; and upon the entire record made at the Interim Hearings, on January 17, 2019, this Court entered the Interim Order on the Motion following a hearing to consider approval of the Interim Borrowing (defined below).

Having considered the Motion and the exhibits attached thereto, including, without limitation, the DIP Agreement and the DIP Note; and upon all of the pleadings filed with the Court; and having overruled all unresolved objections to the relief requested in the Motion; and upon the record made by the Debtors at the Preliminary Hearing and the Final Hearing, including in the Motion and all of the proceedings held before the Court; and after due deliberation, and this Court having found good and sufficient cause appearing therefor,

THE COURT HEREBY FINDS AS FOLLOWS:

A.    Petition. On October 30, 2017 (the "**Petition Date**"), each of the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "**Bankruptcy Court**" or this "**Court**").

B.    Debtor-in-Possession Status; Appointment of Committee. The Debtors are continuing in the management and operation of their businesses and properties as a debtor-in-

possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases. On November 15, 2017, the United States Trustee appointed an official committee of unsecured creditors in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (the "**Committee**").

C.      Notice. The Debtors have given due, appropriate and adequate notice of the Motion and the relief requested in the Motion, and such notice complies with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014, and Local Bankruptcy Rule 4001-2.

D.      Jurisdiction and Venue. Consideration of this Motion constitutes a "core proceeding" as defined in 28 U.S.C. §§ 157(b)(2)(A), (D), (G), (K), (M) and (O). This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§157 and 1334.

E.      Use of Cash Collateral. Pursuant to prior orders of the Court, including most recently that certain Nineteenth Interim Order (I) Authorizing the Use of Cash Collateral Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363, (III) Scheduling Final Hearing and (IV) Granting Related Relief entered on January 17, 2019 (as such order is amended, revised, modified, or further extended on an interim or final basis by further order of the Bankruptcy Court, the "**Cash Collateral Order**"), the Debtors have been and remain authorized to continue using Cash Collateral (as defined in the Cash Collateral Order) in accordance with the terms and conditions of such Cash Collateral Order. All provisions of the Cash Collateral Order remain in effect, enforceable and otherwise unaltered and unimpaired by entry of this Final DIP Order.

731125567

F.    Findings Regarding Postpetition Financing.

(i)    *Need for Postpetition Financing.*   The Debtors represent that, notwithstanding their ability to use Cash Collateral as provided under the Cash Collateral Order, without the DIP Financing proposed by the Motion: (A) the Debtors will not have the funds necessary to make payroll for the week ending January 19, 2019 without immediate access to up to $550,000.00 of DIP Financing (the "**Initial Borrowing**"); (B) may lack sufficient resources to maintain their operations on a going concern basis through the Final Hearing without access to up to an additional $450,000.00 of DIP Financing (together with the Initial Borrowing, the "**Interim Borrowing**"); and (C) may lack sufficient resources to maintain their operations on a going-concern basis and effectuate a possible global resolution of these Chapter 11 Cases over the next 90-120 days without access to the additional DIP Financing available under the terms and conditions of the DIP Agreement and DIP Note;

(ii)    As part of the efforts of the DIP Lender's affiliate, Laureate Ltd., to achieve a consensual and successful resolution of these Chapter 11 Cases within such time period, the DIP Lender is willing to make the DIP Financing available to the Debtors.

(iii)    As more particularly set forth in the DIP Agreement and addressed below and the Cash Collateral Order, the DIP Lender has agreed to provide the DIP Financing on a subordinated basis to the valid, perfected, prior liens and security interests held by (x) the Prepetition Agent or (y) any other party, including Edward Don & Company ("**Edward Don**"), whose liens were not avoidable as of the date of commencement of these Chapter 11 Cases (collectively, the "**Prior Liens**") in and to any of the same collateral that also secures the Debtors' Obligations under the DIP Agreement and DIP Note to the DIP Lender (the "**Shared Collateral**");

(iv)   *No Credit Available on More Favorable Terms.*   The Debtors represent that they are unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code or pursuant to sections 364(a), (b) or (c)(1) of the Bankruptcy Code or secured credit pursuant to sections 364(c)(2) or (c)(3) of the Bankruptcy Code on terms more favorable than the DIP Agreement and DIP Note. Thus the DIP Financing offered by the DIP Lender under the DIP Agreement and DIP Note is the most favorable financing that is available to the Debtors;

(v)   *Business Judgment and Good Faith Pursuant to Section 364(e).*   The Debtors represent that the proposed DIP Financing is the product of vigorous and extensive negotiations between the Debtors and the DIP Lender and that the terms of the DIP Note and the DIP Agreement were negotiated in good faith and at arm's length. The terms of the DIP Financing authorized by this Final DIP Order are fair and reasonable under the circumstances of these Chapter 11 Cases, reflect the exercise of prudent business judgment by the Debtors consistent with their fiduciary duties and are supported by reasonably equivalent value and fair consideration. The DIP Lender is willing to make the DIP Financing available to the Debtors only on the terms set forth in the DIP Agreement and DIP Note and with the protections provided in the Interim Order and this Final DIP Order and is relying in good faith, as that term is used in section 364(e) of the Bankruptcy Code. Thus, the DIP Lender is extending financing to the Debtors in good faith and the DIP Lender is entitled to the benefits of the provisions of section 364(e) of the Bankruptcy Code with respect to any DIP Financing it has provided to the Debtors under the Interim Order, as well as with respect to any DIP Financing it provides to the Debtor pursuant to this Final DIP Order; and

(vi)   *Good Cause. Immediate Entry.*   The Debtors represent that the relief requested by the Motion pursuant to the terms of the DIP Note, DIP Agreement and this Final DIP

731125567

Order is necessary to avoid immediate and irreparable harm to the Debtors' estates. The ability of the Debtors to maintain their business so they can preserve going concern value and continue to treat and service their patients at each of their facilities while the Debtors pursue a potential global resolution of these Chapter 11 Cases over the next few months depends upon the Debtors obtaining the relief requested by the Motion. Thus, good, adequate and sufficient cause has been shown to justify the granting of the relief requested herein, and the immediate entry of this Final DIP Order. [No party appearing in the Chapter 11 Cases has filed or made an objection to the relief sought in the Motion and the entry of this Final DIP Order, and] to the extent any objections were made (and not withdrawn prior to the entry of this Final DIP Order), such objections are overruled.

Based upon the foregoing, and after due consideration and good cause appearing therefor:

IT IS ORDERED, ADJUDGED AND DECREED, that:

1.    Motion Granted. The Motion is granted in its entirety subject to the provisions hereof. All objections (if any) to the entry of this Final DIP Order are resolved by the terms hereof or, to the extent not resolved, are overruled. This Final DIP Order shall become effective immediately upon its entry.

2.    Borrowing Authorization. Without disturbing in any manner (but instead ratifying in all respects) the authorization set forth in Paragraph 2 of the Interim Order regarding the Initial Borrowing, the DIP Lender shall be authorized and empowered to continue to provide, and the Debtors are authorized and empowered to continue to borrow, pursuant to the terms and conditions of the DIP Note and the DIP Agreement and this Final DIP Order. Copies of the DIP Note and the DIP Agreement approved by this Final DIP Order are attached as **Exhibit A** and **Exhibit B**, respectively, to the Interim Order.

731125567

3.     <u>Execution and Compliance with DIP Documents</u>.  The Debtors are authorized and directed to execute, deliver, perform and comply with all of the terms and covenants of the DIP Note and the DIP Agreement, each of which constitute valid, binding, enforceable and non-avoidable obligations of the Debtors for all purposes during the Chapter 11 Cases, any subsequently converted case of any Debtor under chapter 7 of the Bankruptcy Code or after the dismissal or reorganization of any Debtor's Chapter 11 Case or the liquidation of any Debtor's assets.  The Debtors are authorized and directed to perform all acts, and execute and comply with the terms of such other documents, instruments, and agreements in addition to the DIP Note and the DIP Agreement, as the DIP Lender may reasonably require as evidence of and for the protection of the obligations under the DIP Facility and the DIP Collateral or which may be otherwise deemed necessary by the DIP Lender to effectuate the terms and conditions of this Final DIP Order and the DIP Note, DIP Agreement and all additional documents, instruments, and agreements relating thereto being included in the definition of "**DIP Documents**" as used herein.

4.     <u>Use of Loan Proceeds</u>.  The Debtors shall use the proceeds of the loans made by the DIP Lender pursuant to the DIP Documents and this Final DIP Order, as set forth in an Approved Budget, to: (a) pay administrative expenses incurred in the Chapter 11 Cases; (b) provide for working capital and other general corporate purposes; and (c) to make any other payments permitted to be made by the Bankruptcy Code, in this Final DIP Order or in any other order of this Court to the extent provided for under the DIP Documents.

5.     <u>Conclusive Evidence of Obligations</u>.  The terms, conditions and covenants of the DIP Note and the DIP Agreement shall be sufficient and conclusive evidence of the borrowing and financing arrangements among the Debtors and the DIP Lender for all purposes.

731125567

6.   _Superpriority DIP Claim._ For all obligations under the DIP Facility now existing or hereafter arising pursuant to the DIP Documents, the Interim Order, or this Final DIP Order, the DIP Lender is granted an allowed super-priority administrative claim of the kinds specified in sections 503(b) and 507(b) of the Bankruptcy Code pursuant to section 364(c)(1) of the Bankruptcy Code, which claim shall have priority in right of payment over any and all other obligations, liabilities and Indebtedness of the Debtors, now in existence or hereafter incurred by any of the Debtors and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, inter alia, sections 364(c), 503(b) and 507(b) of the Bankruptcy Code (the "**Superpriority DIP Claim**"); _provided, however,_ that the Superpriority DIP Claim shall be junior and subordinated in all respects to the Superpriority Claims (as such term is defined in the Cash Collateral Order) to the extent granted under the Cash Collateral Order in such amounts as determined by a final and non-appealable order of the Bankruptcy Court after notice and a hearing, _and provided further_ that Lender's Superpriority DIP Claim shall not be recoverable from the claims already raised in the adversary filed by the Committee in the Chapter 11 Cases that is pending as Adversary No. 18-00251.

7.   _The DIP Lender Lien Grant._ Subject to the Prepetition Liens and Superpriority Claims of the Prepetition Agent and the AR Lenders under the Cash Collateral Order, to secure the prompt payment and performance of any and all obligations of the Debtors under the DIP Note, DIP Agreement and this Final DIP Order, the DIP Lender shall have, and is granted in accordance with the terms and conditions of the DIP Agreement and this Final DIP Order, effective on and as of the date of entry of the Interim Order:

(a)   Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, perfected, enforceable and non-avoidable first priority liens on and security interests in all of the Collateral,

8

as such term is defined in Section 2.8 of the DIP Agreement (other than any Shared Collateral, subject to the Prior Liens as provided in subpart (b) below) and any other DIP Collateral (as defined herein); and

(b)    Pursuant to section 364(c)(3) of the Bankruptcy Code, valid, perfected, enforceable and non-avoidable junior liens on and security interests in all Shared Collateral subject to the Prior Liens for so long as the obligations of the Debtors to any holder of such liens are outstanding.

8.    <u>Reservation of Rights</u>.  The grant of the liens and the Superpriority DIP Claim as provided herein shall not be construed to alter the rights, if any, of the State of Illinois and its agencies to set-off and/or recoup liabilities of the Debtors from amounts owed to the Debtors. The DIP Lender retains all rights to contest any action by the State of Illinois and its agencies to exercise any rights or set-off and/or recoupment.

9.    <u>DIP Collateral</u>.  The assets and property subject to the DIP Lender's liens and security interests approved by this Final DIP Order include all of the Collateral as identified and described in Section 2.8 of the DIP Agreement (collectively, the **"DIP Collateral"**), including without limitation, all of the Debtors' claims and causes of action under Chapter 5 of the Bankruptcy Code belonging to any of the Debtors' estates under section 541 of the Bankruptcy Code, other than (i) the claims already raised in the adversary filed by the Committee in the Chapter 11 Cases that is pending as Adversary No. 18-00251; and (ii) chapter 5 avoidance actions against third-party, trade creditors that have continued to do business with the Debtors since the Petition Date (the **"Chapter 5 Claims"**); *provided, however,* that the DIP Lender, other than as may be necessary to preserve and maintain its lien on the Chapter 5 Claims, shall only enforce and liquidate its interests in such Chapter 5 Claims in the event any amounts remain due and owing to

731125567

it after all other DIP Collateral consisting of any account receivables has been fully liquidated and distributed. In no event shall: (a) any lien or security interest granted pursuant to the DIP Documents or this Final DIP Order be subject to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code; (b) any person or entity who pays (or through the extension of credit to any Debtor, causes to be paid) any of the obligations under the DIP Facility be subrogated, in whole or in part, to any rights, remedies, claims, privileges, liens or security interests granted in favor of, or conferred upon, the DIP Lender by the terms of the DIP Documents or this Final DIP Order, until such time as all of the obligations under the DIP Facility are indefeasibly paid in full in cash in accordance with the DIP Agreement, DIP Note and this Final DIP Order; or (c) the DIP Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral.

10. <u>Limitation on Charging Expenses Against DIP Collateral; Allowance of Administrative Rent Claim</u>.

(a)    Effective as of the Petition Date, no expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral or the DIP Lender pursuant to Bankruptcy Code sections 105(a) or 506(c) or any similar principle of law or equity, without the prior written consent of the DIP Lender, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender.

(b)    Subject only to the terms and conditions set forth in that certain letter agreement dated as of January 30, 2019, among the Committee, the Debtors, the Debtors' affiliates, the DIP Lender, and Laureate Ltd. regarding the reinstatement of the claims objection rights, if

731125567

any, of the Committee under certain circumstances, all rent that has accrued from the Petition Date
through January 31, 2019, but which otherwise has not been paid as and to the extent required
under the contractual terms of the unexpired real estate leases of the nine (9) facilities where the
Debtors have operated their facilities since the Petition Date shall be hereby allowed in full (as
calculated pursuant to the express provisions of such leases), as an administrative expense of the
Chapter 11 Cases that is due and owing to the entities that are the lessors under such leases,
including each such entity's successor or assignees (whether by agreement, by operation of law,
or otherwise) pursuant to sections 365(d)(3) and 503(b) of the Bankruptcy Code, with the
understanding that rent will continue to accrue for subsequent periods at the appropriate rate
provided in the leases pending their assumption or rejection and any rent claim shall only be paid
upon further order of the Court.

    11.    Lien Perfection. This Final DIP Order, together with the Interim Order, shall be
sufficient and conclusive evidence of the priority, perfection and validity of all of the liens and
security interests in and upon the DIP Collateral granted pursuant to this Final DIP Order and the
DIP Documents effective as of the date of the entry of the Interim Order, without the necessity of
(a) filing, recording or serving any financing statements, mortgages, deeds of trust or other
agreements, documents or instruments which may otherwise be required under federal or state law
in any jurisdiction (collectively, the "**Lien Recording Documents**"), (b) taking possession of the
DIP Collateral or evidence thereof (*provided, however*, that, without limiting the foregoing, any
third party in possession of any DIP Collateral is hereby deemed a bailee for the benefit of and on
behalf of the DIP Lender), or (c) taking any other action to validate or perfect the liens and security
interests granted in the Interim Order, this Final DIP Order, the DIP Agreement or any other DIP
Document. If the DIP Lender shall, in its discretion, elect for any reason to file any such Lien

Recording Documents with respect to such liens and security interests, the Debtors are authorized and directed to execute, or cause to be executed, all such Lien Recording Documents upon the DIP Lender's request and the filing, recording or service thereof (as the case may be) of such Lien Recording Documents shall be deemed to have been made at the time of and on the date of the entry of the Interim Order. The DIP Lender may, in its discretion, file a certified copy of this Final DIP Order in any filing or recording office in any county or other jurisdiction in which the Debtors have an interest in real or personal property and, in such event, the subject filing or recording officer is authorized and directed to file or record such certified copy of this Final DIP Order. To the extent that any applicable non-bankruptcy law would otherwise restrict the grant, scope, enforceability, attachment or perfection of the liens and security interests authorized or created hereby, or otherwise would impose filing or registration requirements with respect thereto, such law is preempted to the maximum extent permitted by the Bankruptcy Code, applicable federal law, and the judicial power of this Court (*provided, however,* that if the DIP Lender takes steps to perfect its Liens and security interests under otherwise applicable state law, it may do so without waiving the benefits of this provision of this Final DIP Order but subject in all circumstances to the subordination of the DIP Lender's Liens to any Prior Liens in Shared Collateral as provided herein). In the event that any Lien Recording Document that the DIP Lender elects to file in accordance with this paragraph contains any limitations, defects, deficiencies or other information that might otherwise limit or adversely affect the DIP Lender's Liens upon and security interests in the DIP Collateral or any of the DIP Lender's claims, rights, priorities and/or protections afforded under the Interim Order, this Final DIP Order, the DIP Agreement or the DIP Note, such limitations, defects, deficiencies or other information shall not impair, limit, restrict or adversely affect in any way any of the DIP Lender's claims, rights, priorities and/or protections granted under

731125567

the Interim Order, this Final DIP Order, the DIP Agreement or any other DIP Document. Without limiting the generality of the other provisions of this Final DIP Order, nothing in this paragraph shall be deemed to prejudice, impair, adversely impact or otherwise alter the rights, claims and priorities of the Prepetition Agent or Edward Don in any of the Shared Collateral subject to a Prior Lien as provided for in this Final DIP Order or the Cash Collateral Order.

12.   <u>Nullifying Prepetition Restrictions on Postpetition Lien Grants</u>.  Notwithstanding anything to the contrary contained in any prepetition agreement, contract, lease, document, note or instrument to which any Debtor is a party or under which any Debtor is obligated, any provision (all such provisions being collectively referred to as the **"Restrictive Clauses"**) that restricts, limits or impairs in any way any Debtor's ability or right to grant liens or security interests upon any of the DIP Collateral (including, among other things, any anti-lien granting or anti-assignment clauses in any leases or other contractual arrangements to which any Debtor is a party) under the DIP Note, DIP Agreement, the Interim Order, or this Final DIP Order or otherwise enter into and comply with all of the terms, conditions and provisions thereof shall not be effective and shall be unenforceable against any such Debtor and the DIP Lender to the maximum extent permitted under the Bankruptcy Code and other applicable law, but only with respect to the entry of the Interim Order and this Final DIP Order granting such postpetition liens, security interests, claims, rights, priorities and/or protections or use of cash collateral to the DIP Lender pursuant to the Interim Order, this Final DIP Order, the DIP Agreement or the DIP Note, or any of the rights of the DIP Lender thereunder or to the maximum extent permitted under the Bankruptcy Code and other applicable law.

13.   <u>Collateral Rights</u>.  Until all of the obligations under the DIP Facility shall have been indefeasibly paid and satisfied in full in immediately available funds and without further order of

13

the Bankruptcy Court: in the event that any party who holds a lien or security interest in any of the DIP Collateral that is junior and/or subordinate to the liens and claims of the DIP Lender in such DIP Collateral receives or is paid proceeds of the DIP Collateral prior to the indefeasible payment and satisfaction in full of all Obligations, such junior or subordinate lienholder shall be deemed to have received, and shall hold such DIP Collateral proceeds in trust for the DIP Lender and shall immediately turnover to the DIP Lender such proceeds for application to the obligations under the DIP Facility in accordance with the DIP Note, the DIP Agreement, or this Final DIP Order; *provided, however,* that nothing herein shall be deemed to adversely impact or otherwise alter the rights of either the Prepetition Agent or Edward Don as to any Shared Collateral subject to a Prior Lien that takes priority over the DIP Lender's Lien as provided by the Interim Order or this Final DIP Order.

14.    <u>Amendment to DIP Documents</u>.  The DIP Lender, with the consent of the Debtors, is authorized to amend and/or modify the DIP Note or the DIP Agreement without further order of the Court; *provided* that any such amendments or modifications must be in writing and served upon counsel for the Committee, the U.S. Trustee and the Prepetition Agent two business days prior to such amendment becoming effective to the extent practicable under the circumstances; and *provided further* that any amendments or modifications that would have the effect of shortening the maturity date of the DIP Facility or increasing the Maximum Amount of borrowings permitted, or the aggregate fees payable, or the rate or amount of interest payable, under the DIP Note and the DIP Agreement shall be done only pursuant to further order of this Court.

15.    <u>Stay Relief/Exercise of Remedies</u>.  The automatic stay provided by section 362 of the Bankruptcy Code shall be, and hereby is, modified to the extent necessary to permit the DIP Lender to make the DIP Financing available and implement the DIP Facility under the terms of

731125567

the DIP Documents and otherwise administer and enforce its rights, claims and remedies thereunder. Without limiting the generality of the foregoing, the automatic stay is hereby deemed lifted and modified by this Final DIP Order to the extent necessary to implement Section 7.1 of the DIP Agreement. Specifically, but without limiting the generality of the foregoing, upon occurrence of an Event of Default and termination of the Notice Period (as such terms are defined in the DIP Agreement), the automatic stay pursuant to section 362 of the Bankruptcy Code shall be automatically terminated without further notice or order of the Court, unless the DIP Lender elects otherwise in a written notice to the Debtors, the Prepetition Agent, and the Committee, and the DIP Lender shall be permitted to exercise all rights and remedies, including with respect to the Collateral, set forth in this Final DIP Order, the DIP Agreement, and/or the DIP Note, and as otherwise available at law without further order or application or motion to the Court, and without restriction or restraint by any stay under Bankruptcy Code sections 362 or 105 or otherwise. In the event that the Debtors, the Committee, the Prepetition Agent, or any other creditor or party in interest requests a hearing seeking to prevent the DIP Lender from exercising any of its rights and remedies that arise after an Event of Default: (i) the sole issue before the Court at such hearing shall be whether an Event of Default has occurred and has not been cured; and (ii) DIP Lender's rights and remedies (other than the right to suspend funding) shall not be enforced unless and until the Court enters an order finding that an Event of Default has occurred. No other issue or argument shall be relevant to any opposition to enforcement of the DIP Lender. Notwithstanding anything contained in Section 7.1 of the DIP Agreement, or in this Final DIP Order, to the contrary, absent the entry of a final and non-appealable Order from the Bankruptcy Court entered after notice and opportunity for a hearing at which: (A) the Court determines the value of the AR Lender Priority Collateral exceeds the amounts owed to the Prepetition Lenders (including with respect to any

15

Superpriority Claims of the Prepetition Agent and AR Lenders under the Cash Collateral Order in the amount allowed pursuant to any subsequent final and nonappealable Order of this Court); and (B) the DIP Lender otherwise establishes its rights to such payments, no fees, expenses, principal and interest payable to DIP Lender pursuant to the DIP Agreement and the DIP Note shall be paid from any portion of the Collateral (as such term is defined in the Prepetition Credit Agreement) until such time as the Obligations (as such term is defined in the Prepetition Credit Agreement) have been satisfied in an amount as allowed by an Order of the Bankruptcy Court, regardless of whether the Maturity Date has occurred. Notwithstanding anything to the contrary contained herein or in any other Order of this Court, the Prepetition Agent and the AR Lenders shall be entitled to assert any rights, claims and defenses to the entry of such Order, all such rights, claims and defenses being specifically reserved and nothing herein shall be deemed to adversely impact or otherwise alter the rights of the DIP Lender as to any senior liens it may have on property of the Debtors' estates that is not Shared Collateral.

16.     <u>Restrictions on Additional Financing</u>. All postpetition advances and other financial accommodations under the DIP Documents are made in reliance on the Interim Order, this Final DIP Order, and the Cash Collateral Order. In the event that an order is entered at any time in the Chapter 11 Cases or in any subsequently converted case under chapter 7 of the Bankruptcy Code (other than the Interim Order, this Final DIP Order or the Cash Collateral Order), which (a) authorizes the sale, lease, or other disposition of property of the Debtors' estates in which the DIP Lender has a lien or security interest, except as expressly permitted hereunder or in the DIP Note or DIP Agreement, or (b) authorizes under section 364 of the Bankruptcy Code the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest in property in which the DIP Lender holds a lien or security interest,

or which is entitled to priority administrative claim status which is equal or superior to that granted to the DIP Lender herein; then, in each instance described in clauses (a) and (b) of this paragraph, (i) the DIP Lender shall first have given its express prior written consent thereto, no such consent being implied from any other action, inaction or acquiescence by the DIP Lender or (ii) such other order shall require that all obligations under the DIP Facility first shall be indefeasibly paid in full in immediately available funds. The liens and security interests granted to or for the benefit of the DIP Lender hereunder and the rights of the DIP Lender pursuant to the Interim Order, this Final DIP Order, the Cash Collateral Order and the DIP Documents with respect to the obligations under the DIP Facility and the DIP Collateral are cumulative and shall not be altered, modified, extended, impaired, or affected by any plan of reorganization or plan of liquidation of the Debtors and, if the DIP Lender shall expressly consent in writing that the obligations under the DIP Facility shall not be repaid in full upon confirmation and effectiveness thereof, shall continue after confirmation and effectiveness of any such plan.

17.    <u>Binding Effect of this Final DIP Order and DIP Note</u>.  Subject to section 364(e) of the Bankruptcy Code, the provisions of this Final DIP Order and any actions taken pursuant hereto shall survive entry of any order which may be entered appointing a trustee in these Chapter 11 Cases, converting the Chapter 11 Cases to chapter 7 cases, appointing a chapter 7 trustee, dismissing any of the Debtors' bankruptcy cases (in the case of any such dismissal, to the maximum extent permitted under the Bankruptcy Code and other applicable law), or any order that may be entered confirming or consummating a plan of reorganization or plan of liquidation of the Debtors; and the terms and provisions of this Final DIP Order as well as the priorities in payment, liens, and security interests granted pursuant to this Final DIP Order, the DIP Agreement and the DIP Note shall continue in this or any superseding cases under the Bankruptcy Code, and

17

such priorities in payment, liens and security interests shall maintain their priority as provided by this Final DIP Order until all obligations under the DIP Facility are indefeasibly paid and satisfied in full; *provided, however,* that except as otherwise provided in this Final DIP Order or in the DIP Documents, all obligations and duties of the DIP Lender hereunder, under the DIP Documents or otherwise with respect to any future loans and advances or otherwise shall terminate immediately as set forth in the DIP Agreement, unless the DIP Lender has given its express prior written consent thereto, no such consent being implied from any other action, inaction or acquiescence by the DIP Lender. Subject to section 364(e) of the Bankruptcy Code, the provisions of this Final DIP Order, the DIP Agreement and the DIP Note shall be binding upon all parties-in-interest in the Chapter 11 Cases, including, without limitation, the Debtors, the DIP Lender, the Prepetition Agent, Edward Don and the Committee, and their respective successors and assigns (including, to the fullest extent permitted by applicable law, any chapter 7 trustee hereinafter appointed or elected for any Debtor's estate, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary hereafter appointed as a legal representative of the Debtors or with respect to the property of the Debtors' estates).

18. <u>Good Faith</u>. The terms of the financing arrangements provided in the DIP Documents have been negotiated in good faith among the Debtors and the DIP Lender, and any loans, advances or other financial accommodations which are made or caused to be made to the Debtors by the DIP Lender pursuant to any such DIP Documents are deemed to have been made and provided in good faith, as the term "good faith" is used in section 364(e) of the Bankruptcy Code, and the DIP Lender, including its successors and assigns, shall be entitled to the full protection of section 364 of the Bankruptcy Code in the event that the Interim Order or this Final DIP Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

731125567

19.    <u>Financing Term</u>. Except as otherwise provided herein, the loans under the DIP

Facility shall be available commencing on the date of the entry of the Interim Order and ending on

the earlier to occur of the date (the "**Maturity Date**") that is May 31, 2019, the date on which the

Debtors' ability to use Cash Collateral Order expires or is otherwise terminated pursuant to the

terms of such order, or as otherwise provided in the DIP Agreement.

20.    <u>No Modification or Stay of this Final DIP Order</u>. If any or all of the provisions of

this Final DIP Order are hereafter modified, vacated or stayed, such modification, vacation or stay

shall not affect: (a) the validity of any obligation, indebtedness or liability incurred by the Debtors

to the DIP Lender prior to the effective date of such modification, vacation or stay; or (b) the

validity or enforceability of any security interest, lien, or priority authorized or created hereunder

or pursuant to the DIP Note and the DIP Agreement, as applicable.  Notwithstanding any such

modification, vacation or stay, any indebtedness, obligations or liabilities incurred by the Debtors

to the DIP Lender prior to the effective date of such modification, vacation or stay shall be

governed in all respects by the original provisions of this Final DIP Order; and the DIP Lender

shall be entitled to all the rights, remedies, privileges and benefits granted herein with respect to

all such indebtedness, obligations and/or liabilities. The indebtedness, obligations and/or liabilities

of the Debtors to the DIP Lender under the Interim Order, this Final DIP Order, the DIP

Agreement, DIP Note and any other DIP Document shall not be discharged by the entry of an

order confirming a plan of reorganization in the Debtors' bankruptcy cases pursuant to section

1141(d)(4) of the Bankruptcy Code or otherwise, unless and until all indebtedness, obligations and

liabilities of the Debtors to the DIP Lender on account of the DIP Financing is indefeasibly paid

in full in accordance with the terms and conditions of the DIP Note prior to or concurrently with

the entry of such order. No indebtedness, obligation or liability owed by the Debtors to the DIP

731125567

Lender under the Interim Order, this Final DIP Order, the DIP Agreement or the DIP Note prior to the effective date of any modification, vacation or stay of this Final DIP Order can, as a result of any subsequent order in the Cases, or in any superseding case(s) be subordinated, lose its lien priority or super-priority administrative claim status, or be deprived of the benefit of the status of the liens and claims granted to the DIP Lender under the Interim Order, this Final DIP Order, the DIP Agreement and/or the DIP Note.

21.    <u>No Control</u>.  In making decisions to make advances under the DIP Agreement and DIP Note pursuant to the Interim Order or this Final DIP Order, the DIP Lender shall not be deemed to be in control of the operations of the Debtors or to be acting as a "controlling person", "responsible person", or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar federal or state statute).

22.    <u>No Third Party Beneficiaries</u>.  Nothing in the Interim Order, this Final DIP Order, or in the DIP Documents shall, or shall be deemed to, confer any benefits or rights upon any party or parties other than the Debtors and the DIP Lender.

23.    <u>Conflicting Provisions</u>.  The DIP Lender shall be entitled to the continuing benefits and protections of (and to otherwise continue to rely upon) all provisions of the Interim Order, the Cash Collateral Order, the DIP Agreement and the DIP Note. ~~Unless otherwise provided in this Final DIP Order, to the extent the terms and conditions of the DIP Note, the DIP Agreement, the Interim Order or Cash Collateral Order are in conflict with the terms and conditions of this Final DIP Order, the terms and conditions of this Final DIP Order shall control.~~

731125567

24.   _Adversary Proceeding_.  Nothing in the Interim Order, this Final DIP Order or in the
DIP Documents shall, or shall be deemed to, impair or affect the rights or claims of the Committee
in the adversary proceeding filed by the Committee in the Chapter 11 Cases that is pending as
Adversary No. 18-00251.

25.   _Effectiveness_.   Consistent  with  the  provisions  of  Paragraph  1  hereof,  and
notwithstanding any Bankruptcy Rule to the contrary, the terms and conditions of this Final DIP
Order shall (a) be immediately enforceable, and (b) not be stayed absent the grant of such stay
under Bankruptcy Rule 8005 after a hearing upon notice to the Debtors and the DIP Lender.

Dated: February _13_, 2019                    ENTER:

                                                    Honorable Janet S. Baer
                                                    United States Bankruptcy Judge

731125567

21