IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| CC Care, LLC, *et al.*[1] | Case No. 17-32406 |
| Debtors. | Judge Janet S. Baer |
| | (Jointly Administered) |

**FINAL ORDER (I) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (II) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361 AND 363 AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of CC Care, LLC and its related affiliates (collectively, the "Debtors") (a) seeking this Court's authorization pursuant to §363(c) of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules") and Rule 4001-2 of the Local Bankruptcy Rules for the Northern District of Illinois ("Local Rules"), for the Debtors to, inter alia, use "Cash Collateral" (as defined below) on an interim and final basis and, pursuant to Bankruptcy Code §§ 361 and 363(e), provide adequate protection to the Prepetition Agent, the AR Lenders (as those terms are defined below), the United States Department of Housing and Urban Development ("HUD") and Edward Don & Company ("Edward Don") with respect to any diminution in the value of the Prepetition Agent's, the AR Lenders', HUD's or Edward Don's interest in the Cash Collateral resulting from (i) the use of Cash Collateral, (ii) the use, sale or lease of other "Collateral" (as defined below) (other than Cash Collateral) and (iii) the imposition of the automatic stay pursuant to Bankruptcy Code § 362(a); (b) seeking a preliminary hearing (the

---

[1] The Debtors in these Chapter 11 Cases are: CC Care, LLC (Case No.: 17-32406), BT Bourbonnais Care, LLC (Case No.: 17-32411), CT Care, LLC (Case No.: 17-32417), FT Care, LLC (Case No.: 17-32423), JT Care, LLC (Case No.: 17-32425), KT Care, LLC (Case No.: 17-32427), SV Care, LLC (Case No.: 17-32430), TN Care, LLC (Case No.: 17-32429), WCT Care, LLC (Case No.: 17-32433), JLM Financial Healthcare, LP (Case No.: 17-32421).

"Preliminary Hearing") on the Motion to consider entry of an interim order pursuant to Bankruptcy

Rule 4001; and (c) requesting that a final hearing (the "Final Hearing") be scheduled, and that

notice procedures in respect of the Final Hearing be established by this Court to consider entry of

a Final Order ("Final Order") authorizing on a final basis, inter alia, the use of Cash Collateral; the

initial Preliminary Hearing having been held before this Court on November 2, 2017, at the

conclusion of which the Court entered that certain *Agreed Interim Order (I) Authorizing Use of*

*Cash Collateral Pursuant to 11 U.S.C. §363, (II) Granting Adequate Protection Pursuant to 11*

*U.S.C. §§361 and 363, and (III) Granting Related Relief* [Dkt. No. 20]; the second Preliminary

Hearing having been held before this Court on November 16, 2017, at the conclusion of which the

Court entered that certain *Second Agreed Interim Order (I) Authorizing Use of Cash Collateral*

*Pursuant to 11 U.S.C. §363, (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§361 and*

*363, and (III) Granting Related Relief* [Dkt. No. 53]; the third Preliminary Hearing having been

held before this Court on November 30, 2017, at the conclusion of which the Court entered that

certain *Third Agreed Interim Order (I) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C.*

*§363, (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§361 and 363, and (III) Granting*

*Related Relief* [Dkt. No. 72]; the fourth Preliminary Hearing having been held before this Court

on December 22, 2017, at the conclusion of which the Court entered that certain *Fourth Agreed*

*Interim Order (I) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. §363, (II) Granting*

*Adequate Protection Pursuant to 11 U.S.C. §§361 and 363, and (III) Granting Related Relief* [Dkt.

No. 107]; the fifth Preliminary Hearing having been held before this Court on January 18, 2018,

at the conclusion of which the Court entered that certain *Fifth Agreed Interim Order*

*(I) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. §363, (II) Granting Adequate*

*Protection Pursuant to 11 U.S.C. §§361 and 363, and (III) Granting Related Relief* [Dkt. No. 116];

2

the sixth Preliminary Hearing having been held before this Court on February 6, 2018, at the

conclusion of which the Court entered that certain *Sixth Agreed Interim Order (I) Authorizing Use*

*of Cash Collateral Pursuant to 11 U.S.C. §363, (II) Granting Adequate Protection Pursuant to 11*

*U.S.C. §§361 and 363, and (III) Granting Related Relief* [Dkt. No. 142]; the seventh Preliminary

Hearing having been held before this Court on February 28, 2018, at the conclusion of which the

Court entered that certain *Seventh Agreed Interim Order (I) Authorizing Use of Cash Collateral*

*Pursuant to 11 U.S.C. §363, (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§361 and*

*363, and (III) Granting Related Relief* [Dkt. No. 164]; the eighth Preliminary Hearing having been

held before this Court on March 12, 2018, at the conclusion of which the Court entered that certain

*Eighth Agreed Interim Order (I) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. §363,*

*(II) Granting Adequate Protection Pursuant to 11 U.S.C. §§361 and 363, and (III) Granting*

*Related Relief* [Dkt. No. 175]; the ninth Preliminary Hearing having been held before this Court

on March 29, 2018, at the conclusion of which the Court entered that certain *Ninth Agreed Interim*

*Order (I) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. §363, (II) Granting Adequate*

*Protection Pursuant to 11 U.S.C. §§361 and 363, and (III) Granting Related Relief* [Dkt. No. 189];

the tenth Preliminary Hearing having been held before this Court on April 26, 2018, at the

conclusion of which the Court entered that certain *Tenth Agreed Interim Order (I) Authorizing Use*

*of Cash Collateral Pursuant to 11 U.S.C. §363, (II) Granting Adequate Protection Pursuant to 11*

*U.S.C. §§361 and 363, and (III) Granting Related Relief* [Dkt. No. 251]; the eleventh Preliminary

Hearing having been held before this Court on May 24, 2018, at the conclusion of which the Court

entered that certain *Eleventh Agreed Interim Order (I) Authorizing Use of Cash Collateral*

*Pursuant to 11 U.S.C. §363, (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§361 and*

*363, and (III) Granting Related Relief* [Dkt. No. 281]; the twelfth Preliminary Hearing having been

held before this Court on June 28, 2018, at the conclusion of which the Court entered that certain

*Twelfth Agreed Interim Order (I) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. §363,*

*(II) Granting Adequate Protection Pursuant to 11 U.S.C. §§361 and 363, and (III) Granting*

*Related Relief* [Dkt. No. 298]; the thirteenth Preliminary Hearing having been held before this

Court on September 25, 2018, at the conclusion of which the Court entered that certain *Thirteenth*

*Agreed Interim Order (I) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. §363,*

*(II) Granting Adequate Protection Pursuant to 11 U.S.C. §§361 and 363, and (III) Granting*

*Related Relief* [Dkt. No. 351]; the fourteenth Preliminary Hearing having been held before this

Court on October 24, 2018, at the conclusion of which the Court entered that certain *Fourteenth*

*Agreed Interim Order (I) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. §363,*

*(II) Granting Adequate Protection Pursuant to 11 U.S.C. §§361 and 363, and (III) Granting*

*Related Relief* [Dkt. No. 373]; the fifteenth Preliminary Hearing having been held before this Court

on November 6, 2018, at the conclusion of which the Court entered that certain *Fifteenth Agreed*

*Interim Order (I) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. §363, (II) Granting*

*Adequate Protection Pursuant to 11 U.S.C. §§361 and 363, and (III) Granting Related Relief* [Dkt.

No. 380]; the sixteenth Preliminary Hearing having been held before this Court on November 20,

2018, at the conclusion of which the Court entered that certain *Sixteenth Agreed Interim Order*

*(I) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. §363, (II) Granting Adequate*

*Protection Pursuant to 11 U.S.C. §§361 and 363, and (III) Granting Related Relief* [Dkt. No. 387];

the seventeenth Preliminary Hearing having been held before this Court on December 11, 2018, at

the conclusion of which the Court entered that certain *Seventeenth Agreed Interim Order*

*(I) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. §363, (II) Granting Adequate*

*Protection Pursuant to 11 U.S.C. §§361 and 363, and (III) Granting Related Relief* [Dkt. No. 397];

CHICAGO/#3252604.3

the eighteenth Preliminary Hearing having been held before this Court on December 11, 2018, at

the conclusion of which the Court entered that certain *Eighteenth Agreed Interim Order*

*(I) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. §363, (II) Granting Adequate*

*Protection Pursuant to 11 U.S.C. §§361 and 363, and (III) Granting Related Relief* [Dkt. No. 415];

the nineteenth Preliminary Hearing having been held before this Court on January 10, 2019, at the

conclusion of which the Court entered that certain *Nineteenth Agreed Interim Order*

*(I) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. §363, (II) Granting Adequate*

*Protection Pursuant to 11 U.S.C. §§361 and 363, and (III) Granting Related Relief* [Dkt. No. 425];

based upon agreement of the Debtors, the Statutory Committee, Edward Don, the United States

Trustee and the DIP Lender, on February 8, 2019, the Court entered that certain *Twentieth Agreed*

*Interim Order (I) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. §363, (II) Granting*

*Adequate Protection Pursuant to 11 U.S.C. §§361 and 363, and (III) Granting Related Relief* [Dkt.

No. 438]; (collectively, the "Interim Order"); due and sufficient notice of the Motion, the

Preliminary Hearing and the Final Hearing having been given; copies of the Interim Order having

been served upon the Notice Parties (defined below) in accordance with the terms thereof; and

upon the entire record made at the Preliminary Hearing and the Final Hearing, and this Court

having found good and sufficient cause appearing therefor,

THE COURT HEREBY FINDS AS FOLLOWS:

A.    On October 30, 2017 (the "Petition Date"), each of the Debtors filed voluntary

petitions for relief with this Court under Chapter 11 of the Bankruptcy Code (this "Chapter 11

Cases").

CHICAGO/#3252604.3

B.    The Debtors are continuing in the management and operation of their businesses and properties as Debtors in possession pursuant to §§1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

C.    This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over the Chapter 11 Cases, and over the persons and property affected hereby. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Chapter 11 Cases and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    The United States Trustee appointed an official committee of unsecured creditors in the Chapter 11 Cases pursuant to §1102 of the Bankruptcy Code (the "Statutory Committee") on November 15, 2017.

E.    On or about September 4, 2018, in each of the Chapter 11 Cases, Laureate Mortgage, LLC ("LML") filed a notice that pursuant to Fed. R. Bank. P. 3001(e)(2) (collectively, the "LML Rule 3001(e) Notices") that pursuant to the terms of an Assignment and Assumption Agreement dated August 29, 2018 pertaining to each one of the Debtors, HUD transferred and assigned to LML all of HUD's right, title and interest in and to all of the proof of claims it has filed in these chapter 11 cases (collectively, the "Proofs of Claim") and all of the collateral documents it has with the Debtors (collectively, the "Assigned Claims"), except for any claims, defense and allegations existing or arising, in whole or part, from the HUD Regulatory Agreements referenced in such Proofs of Claim unless and until HUD withdraws any such claims (the "Retained Regulatory Claims"). Shortly thereafter, on or about September 6, 2018, Laureate Ltd. ("Laureate") filed similar notices under Fed. R. Bank. P. Rule 3001(e) in each of the Chapter 11 Cases to provide notice and evidence the further transfer of the Assigned Claims from LML to Laureate. To date, no objection has been filed with respect to any of the notices of transfer filed

6

by either LML or Laureate in these Chapter 11 Cases. As a result of the foregoing, various references to HUD below that have been made in prior Interim Orders are now being made to Laureate as successor in interest to HUD with respect to such matters, as further addressed below.

F.    After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties-in-interest as set forth in ¶20 herein, the Debtors (on behalf of themselves and their estates) admit, stipulate, acknowledge and agree (collectively, the "Debtors' Stipulations") that:

(i)    *Prepetition Credit Agreement.* Pursuant to that certain Credit and Security Agreement dated as of July 3, 2012 (as amended, modified or otherwise supplemented from time to time, the "Prepetition Credit Agreement" and together with all other documents executed in connection therewith, the "Prepetition Credit Documents"), among the Debtors (exclusive of JLM Financial Healthcare, LP ("JLM")) (collectively, the "Operating Debtors"), SH Care, LLC (a non-debtor affiliate), the lenders party thereto from time to time (collectively, the "AR Lenders"), and MidCap Funding IV Trust (f/k/a MidCap Funding IV, LLC), as assignee of MidCap Financial Trust (f/k/a MidCap Financial, LLC) and successor administrative agent (the "Prepetition Agent"), the AR Lenders extended certain loans and other accommodations to the Operating Debtors on the terms set forth therein. Pursuant to that certain Payment Guaranty, dated as of July 3, 2012, JLM and JLM Financial Investments 13, LLC, a Texas limited liability company guaranteed the payment and performance of the AR Lenders' Prepetition Obligations (as defined below).

(ii)    *AR Lenders' Prepetition Obligations.* As of the Petition Date, the AR Lenders were owed $8,390,987.49 in revolving loan principal obligations, plus interest,

fees, costs and expenses and all other "Obligations" under and as defined in the Prepetition Credit Agreement (collectively, the "AR Lenders' Prepetition Obligations").

(iii)    *Collateral for the AR Lenders' Prepetition Obligations.*  The AR Lenders' Prepetition Obligations are secured by perfected liens and security interests (the "Prepetition Liens") in substantially all of the existing and after acquired assets of the Operating Debtors excluding the Excluded Collateral (as that term is defined in the Intercreditor Agreement (defined herein)) (such non-Excluded Collateral, together with collateral granted or pledged to the Prepetition Agent by any other party, shall collectively be referred to as the "AR Lenders' Collateral").  As set forth in greater detail in the Intercreditor Agreement, the Prepetition Agent holds (A) senior prepetition liens on AR Lender Priority Collateral (as defined in that certain Amended and Restated Intercreditor Agreement and Rider thereto dated as of September 27, 2012 by and among the Operating Debtors, the Prepetition Agent and Laureate, as successor in interest to HUD (as assignee of the FHA Mortgagee) (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Intercreditor Agreement")) and (B) junior prepetition liens on FHA Mortgagee's Priority Collateral (as defined in the Intercreditor Agreement).

(iv)    *Validity, Perfection and Priority of Prepetition Liens.*  The Debtors (for themselves and their estates) and the Prepetition Agent, for itself and the AR Lenders, acknowledge and agree that: (a) as of the Petition Date, the senior liens granted to the Prepetition Agent on the AR Lender Priority Collateral were (1) valid, binding, enforceable, non-avoidable and properly perfected, and (2) senior in priority over any and all other liens on the AR Lender Priority Collateral, subject only to certain liens otherwise permitted by the Prepetition Credit Documents (to the extent any such permitted liens are

8

valid, properly perfected, non-avoidable and senior in priority to the Prepetition Liens as of the Petition Date, the "Permitted Prior Liens");[2] (b) as of the Petition Date, the junior liens granted to the Prepetition Agent on the FHA Mortgagee's Priority Collateral were (1) valid, binding, enforceable, non-avoidable and properly perfected, and (2) with respect to the priority between the Prepetition Agent and Laureate, as successor in interest to HUD, senior in priority over any and all other liens on the FHA Mortgagee's Priority Collateral, subject only to any liens granted in favor of Laureate, as successor in interest to HUD (to the extent set forth in the Intercreditor Agreement); (c) no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens or AR Lenders' Prepetition Obligations, exist, and no portion of the Prepetition Liens or AR Lenders' Prepetition Obligations is subject to any challenge or defense, including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (d) the Debtors and their estates have no claims, objections, challenges, causes of actions, and/or choses in action, including without limitation, avoidance claims under chapter 5 of the Bankruptcy Code, against any of the Prepetition Agent, the AR Lenders or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees as such may relate to the validity and extent of the Prepetition Liens; (e) as of the Petition Date, the value of the AR Lenders' Collateral securing the AR Lenders' Prepetition Obligations exceeded the amount of those

---

[2]  Nothing herein shall constitute a finding or ruling by this Court that any such Permitted Prior Liens are valid, senior, enforceable, prior, perfected or non-avoidable.  Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to, the Debtors, Laureate, as successor in interest to HUD, the AR Lenders, Edward Don and the Statutory Committee to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any such Permitted Prior Liens and/or security interest.

CHICAGO/#3252604.3

obligations, and accordingly the AR Lenders' Prepetition Obligations are allowed secured claims within the meaning of §506 of the Bankruptcy Code; and (f) any payments made on account of the AR Lenders' Prepetition Obligations to or for the benefit of the Prepetition Agent or the AR Lenders prior to the Petition Date were on account of amounts in respect of which the Prepetition Agent and the AR Lenders were oversecured, were payments out of the AR Lenders' Collateral, and such payments did not diminish any property otherwise available for distribution to unsecured creditors.

(v)      *Cash Collateral.* The Debtors represent that all of the Operating Debtors' cash, including, without limitation, the cash in their deposit accounts (including, without limitation, cash transferred from any of their deposit accounts to any deposit account held by JLM in a representative capacity, or cash representing loan draws or advances under the Prepetition Credit Documents) wherever located, whether as original collateral or proceeds of other AR Lenders' Collateral, constitute the Cash Collateral of the Prepetition Agent and the AR Lenders, with the exception of cash on deposit (as of the Petition Date or thereafter) in any Lease Payment Account (as that term is defined in the Intercreditor Agreement), which is solely the cash collateral of Laureate, as successor in interest to HUD.

(vi)     *Default by the Debtors.* The Debtors acknowledge and stipulate that the Debtors are in default of their debts and obligations under the Prepetition Credit Documents.

G.      The Debtors represent that an immediate need exists for them to have access to Cash Collateral in order to operate their businesses in the ordinary course of business and maintain their properties in accordance with state and federal law.  In the absence of the use of Cash

CHICAGO/#3252604.3

Collateral, the ongoing administration of the Debtors' businesses and assets as a going concern would not be possible, and would cause serious and irreparable harm to the Debtors, their businesses, and their estates.

H.      Subject to ¶21 below, the Debtors requested that, pursuant to Bankruptcy Code § 363(c), the Prepetition Agent, the AR Lenders, Laureate, as successor in interest to HUD and Edward Don's consent to the Debtors' use of Cash Collateral and the Debtors' use, sale and lease of the other Collateral[3] pursuant to the terms and conditions of this Final Order (the "Final Order"). The Debtors acknowledge and agree the Prepetition Agent, the AR Lenders, Laureate, as successor in interest to HUD and Edward Don are entitled to adequate protection pursuant to Bankruptcy Code §§ 361 and 363(e) with respect to Cash Collateral and other Collateral, including, without limitation, to the extent of, and to compensate the AR Lenders for any loss or diminution in the value of Cash Collateral or other Collateral resulting from the Debtors' use of Cash Collateral, the use, sale or lease of other Collateral and the imposition of the automatic stay during the term of this Final Order.

I.      Laureate, as successor in interest to HUD, asserts that the HUD Loan Documents (as described below) and HUD continues to assert that the HUD Regulatory Agreements (collectively with the HUD Loan Documents, "HUD Documents"), are valid and enforceable against the Debtors, and asserts rights in cash collateral against each Debtor under such documents, including, inter alia:

        (i)      security agreements from each Operating Debtor granting security interests in all existing and after acquired property, including, without limitation, cash and deposit accounts;

---

[3] The terms "Collateral" shall mean the AR Lenders' Collateral and any collateral securing HUD's prepetition obligations.

(ii)    security agreements from JLM granting security interests in existing or hereafter arising accounts, deposit accounts, cash, and other collateral as set forth therein;

(iii)    deposit account instructions and service agreements and deposit account control agreements ("DACAs") from the Operating Debtors, some of which DACAs are also executed by BT Bourbonnais Care, LLC, in its capacity as representative of the Operating Debtors;

(iv)    Operating leases executed by Operating Debtors with applicable non-debtor owner of each facility ("Owner" or "Mortgagor"), each subordinated via recorded Subordination Agreements to HUD Regulatory Agreements, mortgages, and HUD Program Requirements (as defined in the HUD Documents);

(v)    recorded assignments of operating lease rents in each HUD mortgage that secure obligations under the HUD Loan Documents, and recorded assignment of operating lease rents in each HUD Regulatory Agreement with Owners, securing HUD's liability under its endorsement of the applicable mortgage notes; replacement reserve deposits, and obligations thereunder];

(vi)    Intercreditor Agreement with Operating Debtors requiring each Operating Debtor to deposit its monthly operating lease rents into a Lease Payment deposit account of such Operating Debtor, subject to Laureate's first lien DACA.  The Owners and Operating Debtors authorized Laureate, as successor in interest to HUD, to debit out of such account Laureate's debt service, with any excess of the required lease payment over the amount of such debt service to be paid to the applicable Owner.

HUD Documents (i) - (iii) secure Operating Debtors' obligations under their operating leases and their Regulatory Agreements with Laureate, as successor in interest to HUD, as

well as the Owners' obligations to Laureate, as successor in interest to HUD under these and other agreements.

J.      Laureate, as successor in interest to HUD, further asserts claims against each Operating Debtor based on the HUD Loan Documents, mortgage insurance contracts, and operating lease rents applicable to each facility, and against JLM, for the aggregate of the following: the amount of claims, in the aggregate, are no less than (a) $81,834,514 (representing the approximate total outstanding principal amount of the HUD mortgage loans as of the Petition Date), plus interest, protective advances, fees, costs, unpaid deposits to escrows or reserves or other amounts under the HUD loan documents; (b) $82,898,527.52 (representing the approximate aggregate amount paid by HUD under its contracts for mortgage insurance); (c) the amount of rents with respect to each facility, in an approximate amount not less than the amount of debt service on the applicable HUD mortgage loan; and (d) other unpaid amounts, obligations or claims.[4]

K.      Laureate, as successor in interest to HUD, asserts that, as of the Petition Date, the Debtors are in default of their obligations under the HUD Documents and of their obligations to pay operating lease rents.

L.      Laureate, as successor in interest to HUD (with respect to the HUD Loan Documents) and HUD with respect to the HUD Regulatory Agreements, each do not waive or consent to any breach, default, or violation of applicable law or of the HUD Documents, including, but not limited to, those described herein, but reserve all rights, claims, defenses and remedies with respect thereto.

---

[4] In the event any of such claims or portions thereof are determined to be post-petition claims, Laureate reserves the right to assert them as post-petition administrative expense claims.

CHICAGO/#3252604.3

M.     Edward Don asserts that, as of the Petition Date, the Terms and Conditions of the extension of credit to each Operating Debtor (as described below) and the Security Documents (collectively, the "Don Documents") are valid and enforceable against the Debtors, and asserts rights in cash collateral and the Collateral against each Operating Debtor under such documents, including, *inter alia*:

(i)     security agreements from each Operating Debtor granting security interests in all existing and after acquired property, including, without limitation, cash and all of such Operating Debtor's personal property;

(ii)    UCC-1 financing statements filed with the Secretary of State of Delaware, securing interests in existing or hereafter arising property, accounts, accounts receivable, cash, and other Collateral as set forth therein.

Edward Don stipulates that its liens and security interests are junior, in all respects, to the liens and security interests held by the Prepetition Agent.

N.     Subject to the entry, and continued effectiveness, of this Final Order, the Prepetition Agent, the AR Lenders, Laureate, as successor in interest to HUD and Edward Don, have consented to the Debtors' use of Cash Collateral and use, sale or lease of other Collateral. The foregoing notwithstanding, nothing in this Final Order shall be construed as limiting or prohibiting the Prepetition Agent, the AR Lenders, Laureate, Edward Don and the Statutory Committee from objecting to any relief sought by the Debtors in these Chapter 11 Cases.

O.     On January 17, 2019, the Debtors filed and served its *Notice of Final Hearing on Debtor's Motions for Authority to Use Cash Collateral and for Related Relief and for Authority to Obtain Subordinate Secured Financing to Cover Certain Cash Shortfalls and for Related Relief* on, among others, (i) the Office of the United States Trustee; (ii) counsel to the Prepetition Agent,

14

the AR Lenders; (iii) the Illinois Department of Healthcare & Family Services; (iv) HUD and Laureate as its successor in interest, (v) counsel for the Statutory Committee; and (vi) the creditors holding the 20 largest unsecured claims against the Debtors (collectively, the "Notice Parties") [Dkt No. 427]. Such notice of the Final Hearing and the relief requested in the Motion constitutes adequate and sufficient notice under Bankruptcy Code §§ 102(1), 364(c) and 364(d), Bankruptcy Rules 2002 and 4001(c) and the Local Bankruptcy Rules, and no other or further notice need be given.

P.      At the Preliminary Hearing, the Court considered and accepted the offer of proof made by counsel on behalf of the Debtors' representative, Jerry Harris of TM Healthcare Management, LLC ("TM Healthcare"), and other representations made by counsel regarding:

(i)      the negotiations pertaining to this Final Order;

(ii)     the necessity for this Final Order;

(iii)    the events leading up to the filing of this Chapter 11 Cases by the Debtors; and

(iv)     the Debtors need to use Cash Collateral to the extent necessary to avoid immediate and irreparable harm to their estates, pending a final hearing in accordance with Bankruptcy Rule 4001(c).

Q.      Based on the record presented to the Court by the Debtors at the Final Hearing, the Debtors, the Prepetition Agent, the AR Lenders, Laureate and Edward Don and their respective agents, advisors and employees have acted in good faith in negotiating, consenting and agreeing to the Debtors' use of Cash Collateral and use, sale and lease of other Collateral as contemplated and provided by this Final Order. The negotiation of the terms and provisions of this Final Order have been conducted at arm's length, that such terms and conditions are fair and reasonable, under

the circumstances, and reflect the Debtors' exercise of reasonable business judgment consistent with the Debtors' fiduciary duties.

R.    The Debtors have requested immediate entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and Local Bankruptcy Rule 4001-2(C). This Court concludes that entry of this Final Order is in the best interest of the Debtors' estates and creditors as its implementation will, among other things, provide the Debtors with the necessary funds to conduct the Debtors' businesses as going concerns and maximize the value of the Debtors' assets for the benefit of their creditors and estates.

S.    On January 17, 2019, the Court entered that certain *Interim Order (I) Authorizing Debtors to Obtain Secured Post-Petition Financing Pursuant to Section 364 of the Bankruptcy Code and (II) Scheduling a Final Hearing* ("Interim DIP Order") [Dkt. No 424], pursuant to which the Debtors were authorized to obtain DIP financing from 25 Capital Investment Holdings, LLC, an affiliate of Laureate (the "DIP Lender"). Contemporaneous with the entry of this Final Order, the DIP Lender is seeking entry of that certain *Final Order Authorizing Debtors to Obtain Secured Post-Petition Financing Pursuant to Section 364 of the Bankruptcy Code and Allowing Administrative Rent Claim* (the "Final DIP Order") [Dkt. No __], Pursuant to the terms of the Interim DIP Order and the Final DIP Order, the DIP Lender was granted, *inter alia*, (a) liens and security interests junior and subordinate to the liens and security interests of the Prepetition Agent and (b) superpriority claims junior to the Superpriority Claims granted in this Final Order.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, EFFECTIVE IMMEDIATELY, THAT:

1.    <u>Granting of Motion</u>.  The Motion is granted as set forth herein and the continued use of Cash Collateral on an interim basis is authorized, subject to the terms and conditions set forth in this Final Order.

2.    <u>Objections Overruled and/or Withdrawn</u>.  The *Limited Objection* filed by the United Food and Commercial Workers Unions and Employers Midwest Pension Plan [Dkt. No. 62] is overruled.  The *Objection* filed by Edward Don & Company [Dkt. No. 114] is withdrawn. The *Limited Objection* filed by Laureate [Dkt. No. 343] is withdrawn.

3.    <u>Authorized Uses of Cash Collateral</u>.  The Debtors are hereby authorized to use Cash Collateral during the term of this Final Order to pay only the ordinary and reasonable expenses of operating their businesses, as limited by their respective Budgets as described in ¶7 herein; *provided* the Prepetition Agent, the AR Lenders, Laureate and Edward Don are granted adequate protection for any diminution in the value of the Collateral resulting from (i) the Debtors' use of Cash Collateral pursuant to Bankruptcy Code § 363(c); (ii) the use, sale or lease of the Collateral (other than Cash Collateral) pursuant to Bankruptcy Code § 363(c); and (iii) the imposition of the automatic stay pursuant to Bankruptcy Code § 362(a) as follows:

> (1)    the Prepetition Agent, Laureate, as successor in interest to HUD with respect to the Assigned Claims and Edward Don shall be and hereby are granted (effective as of the Petition Date and without the necessity of the execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements or otherwise), valid and perfected, replacement security interests in, and liens ("<u>Replacement Liens</u>") on, all of the Debtors' right, title and interest in, to and under the Collateral, subject only to Permitted Prior Liens, to the extent, and in the same priority, as such security interests and liens existed as of the Petition Date.  Other than with respect to proceeds from claims brought under Bankruptcy Code §549, the Replacement Liens shall not extend to any avoidance actions or claims arising under Chapter 5 of the Bankruptcy Code (or any proceeds thereof) in any of the Chapter 11 Cases; and

> (2)    if and to the extent the adequate protection of the interests of the Prepetition Agent, Laureate and Edward Don in the Collateral pursuant to this Final Order proves inadequate, the Prepetition Agent, the AR Lenders, Laureate

CHICAGO/#3252604.3

and Edward Don shall be and hereby are granted an administrative expense claim (the "Superpriority Claims") with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, without limitation, Bankruptcy Code §§ 105, 326, 328, 330, 331, 503(b), 507(a), 507(b) and 726, and shall at all times be senior to the rights of the Debtors. No cost or expense of administration under Bankruptcy Code §§ 105, 364(c)(1), 503(b), 506(c), 507(b) or otherwise, including those resulting from the conversion of any of these Chapter 11 Cases pursuant to Bankruptcy Code § 1112, shall be senior to, or pari passu with, the Superpriority Claims of the Prepetition Agent, the AR Lenders, Laureate and Edward Don. Other than with respect to claims brought under Bankruptcy Code §549, the Superpriority Claims shall not extend to any avoidance actions or claims arising under Chapter 5 of the Bankruptcy Code (or any proceeds thereof) in any of the Chapter 11 Cases. Unless otherwise agreed to by the Debtors, HUD, Edward Don and the Statutory Committee, any party asserting a Superpriority Claim must obtain an Order of the Bankruptcy Court establishing the amount and validity of such Superpriority Claim and all parties reserve the right to object to same.

4.    Adequate Protection.  Under the circumstances, the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Agent, the AR Lenders, Laureate and Edward Don; *provided, however*, nothing herein contained shall affect or impair the Prepetition Agent's, the AR Lenders', Laureate's and Edward Don's right to seek additional adequate protection of their respective interests or the Debtors' right to oppose such additional adequate protection.

5.    Priorities.  The Replacement Liens shall be prior and senior to all liens and encumbrances (other than Permitted Prior Liens) of all other secured creditors in and to such Collateral granted, or arising, after the Petition Date (including, without limitation, liens and security interests, if any, granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors and the liens of the DIP Lender). The Replacement Liens granted pursuant to this Final Order shall constitute valid and duly perfected security interests and liens, and the Prepetition Agent, the AR Lenders, Laureate and Edward Don shall not be required to file or serve financing statements, notices of lien or similar

18

instruments in respect thereof which otherwise may be required under federal or state law in any

jurisdiction, or take any action, including taking possession or obtaining control agreements, to

validate and perfect such security interests and liens; and the failure by the Debtors to execute any

documentation relating to the Replacement Liens shall in no way affect the validity, perfection or

priority of such Replacement Liens.  If, however, the Prepetition Agent, the AR Lenders, Laureate

or Edward Don, in their sole discretion, determine to file any such financing statements, notices

of lien or similar instruments, or to otherwise confirm perfection of such Replacement Liens, (i) the

Debtors are authorized and directed to cooperate with and assist in such process, as may be

reasonably necessary; (ii) the stay imposed by Bankruptcy Code § 362(a) is hereby lifted to allow

the filing and recording of a certified copy of this Order or any such financing statements, notices

of lien or similar instruments; and (iii) all such documents shall be deemed to have been filed or

recorded at the time of and on the Petition Date, regardless of the actual date of such filing or

recording. Notwithstanding any other provision of this Final Order, no deficiency in the perfection,

or in the continuation of the perfection, of any prepetition lien shall be cured or perfected by the

entry of this Final Order.

　　　　6.　　　Continued Effectiveness of Intercreditor Agreement.  Notwithstanding the rights of

the Debtors, the Statutory Committee and other parties-in-interest (except the AR Lenders and

Prepetition Agent) to contest the validity and priority of Laureate's alleged security interests, as

successor in interest to HUD with respect to the Assigned Claims[5], the provisions of the

Intercreditor Agreement shall (a) remain in full force and effect and shall continue with respect to

the priority of the liens and security interests granted to the Prepetition Agent (on behalf of itself

and the AR Lenders) and Laureate in the Collateral, and (b) be binding on the DIP Lender.

---

[5] On July 23, 2018, the Statutory Committee filed its Adversary Complaint against HUD (Adv. Case. No. 18- 00261).

CHICAGO/#3252604.3

7.    Budget.    Attached hereto as Group Exhibit "A" are individual budgets for each of the Operating Debtors (collectively, the "Budget") through May 11, 2019, which has been consented to by the Prepetition Agent, the AR Lenders, Laureate and Edward Don; *provided, however* that such consent by Laureate above or anywhere else herein does not, and shall not be deemed to, in any way prejudice, waive or otherwise limit any action, claim or right Laureate may assert with respect to compelling performance of Debtors' obligations under Section 365(d)(3) of the Bankruptcy Code, including, without limitation, with respect to any request or demand Laureate may make with respect to the payment of rent or real estate taxes by any of the Debtors or any party's right to oppose such request or demand.  The Budget reflects, on a line-item basis, anticipated cash receipts and expenditures on a weekly basis and includes all necessary and required expenses each Debtor expects to incur during each week of the Budget.  Each Debtor is authorized to use the Cash Collateral only for payment of such items (and in such amounts) as are set forth in the Budget.  Prior to the expiration of the term of the Budget then in effect and through the "Effective Date" of any Plan of Reorganization (or Plan of Liquidation) confirmed in the Chapter 11 Cases, the Debtors shall deliver revised Budgets, which Budgets shall be subject to (i) the consent of the Prepetition Agent, the AR Lenders, the Statutory Committee, Laureate and Edward Don, or (ii) Order of the Court.  Not later than the fourth (4th) business day of each week, the Debtors shall provide the AR Lenders, Laureate, Edward Don and the Statutory Committee with a variance report (by Operating Debtor) reflecting, on a line-item basis, the actual cash disbursements and revenues for the preceding week and the percentage variance (the "Variance Percent") of such actual disbursements and revenues from those reflected in the Budget for that period.  Subject to this ¶7 and ¶44 of this Final Order, any disbursement by the Debtors other than for budgeted amounts as set forth in the Budget shall constitute a Default in accordance with the

CHICAGO/#3252604.3

provisions of this Final Order unless the AR Lenders, Laureate and Edward Don consent to those

changes in writing or the Court orders otherwise; *provided, however,* (i) the Debtors may make

payments in excess of the total budgeted disbursements so long as the Variance Percent for any

line item in the Budget shall not exceed ten percent (10.0%) of the budgeted disbursements for

that week; and (ii) any amount included in the Budget that is not incurred or paid during a particular

week shall be permitted to be carried over into any subsequent week covered by the term of this

Final Order. Notwithstanding any provision in this Final Order to the contrary, no payment made

to any insider of the Debtors, and no payment made by one Debtor by or on behalf of another

Debtor, pursuant to this Final Order shall be deemed to confirm the validity, priority or extent of

the claim of any insider or Debtor or insulate that payment from potential challenge, avoidance

and recovery.

      8.    <u>Cash Management</u>. The Debtors shall continue their prepetition cash management

system in accordance with Orders of this Court and pursuant to the existing deposit agreements

among the Debtors and its depository banks, subject, in all respects, to any deposit account control

agreements and/or deposit account collection agreements). With respect to the foregoing, (i) the

termination and fee provisions shall remain in full force and effect (subject to the automatic stay),

and (ii) the depository banks are authorized to debit the Debtors' accounts in the ordinary course

of business for any postpetition fees, costs and service charges associated with the deposit

accounts. The depository banks are authorized to rely on any representations made by the Debtors

with respect to whether any check or other payment order drawn or issued by the Debtors prior to

the Petition Date should be honored pursuant to this or any other order of this Court, and such

institutions shall not have any liability to any party for relying on such representations by the

Debtors as provided for herein.

9.    <u>Accounting</u>.  As additional adequate protection, the Debtors shall account to the AR Lenders, Laureate and Edward Don for all cash, checks, notes, drafts, instruments, acceptances or other property representing cash or other proceeds of the Collateral in the Debtors' possession, custody or control, by providing the following on a monthly basis (with copies to the Statutory Committee and the Office of the Illinois Attorney General):    (i) Accounts Receivable Reconciliation and Aging by payor (per the "Point Click Care" payor classifications) and by facility; (ii) daily collections breakdown of all accounts receivable, by facility; (iii) census and summaries by facility; and (iv) correspondence with state and federal regulatory agencies regarding the Debtors' business operations, if any.  Additionally, Debtors shall continue to provide Prepetition Agent with the same access to the Point Click Care system that existed prior to the Petition Date, including cash receipts and posting reports (on a summary basis).  For purposes of this ¶9, with the exception of cash on deposit in any Lease Payment Account, all cash, checks, notes, drafts, instruments, acceptances and other property in the nature of items of payment representing proceeds of property and interests in property of the Debtors currently in the possession of the Debtors or in any accounts in financial institutions, including any lock box or depository accounts, shall be deemed proceeds of Collateral unless such proceeds are specifically identified as not being proceeds of Collateral.

10.    <u>Term of Use of Cash Collateral</u>.  The agreement by the Prepetition Agent, the AR Lenders, Laureate and Edward Don to allow the use of Cash Collateral and the Collateral shall continue throughout the term of this Final Order, unless terminated prior to this date upon the occurrence of the Termination Date or otherwise pursuant to the terms hereof.

11.    <u>Termination Date</u>.  The Debtors' right to use Cash Collateral shall terminate automatically if a Default occurs (the date of any such termination, the "<u>Termination Date</u>"), and

22

the Debtors (a) may not use, sell or lease Cash Collateral; (b) shall segregate and account for any

Cash Collateral in its possession, custody or control; and (c) shall hold such Cash Collateral for

the exclusive benefit of the AR Lenders, Laureate and Edward Don, subject to further order of the

Court; *provided, however*, the obligations and rights of the AR Lenders, Laureate, Edward Don

and the Debtors with respect to all transactions which have occurred prior to the Termination Date

shall remain unimpaired and unaffected by any such termination and shall survive such

termination, including, without limitation, unpaid budgeted expenses incurred prior to the

Termination Date (subject to there being Cash Collateral to pay same); *provided further* upon such

termination, the AR Lenders, Laureate and Edward Don shall be deemed to have retained all of

their rights and remedies, including, without limitation, as provided in the Prepetition Credit

Agreements, the HUD Documents, the Don Documents and under the Bankruptcy Code and the

Debtors reserve all defenses with respect thereto.

12.    Defaults.  A default under this Final Order shall include: (i) the entry of an order

dismissing any of the Chapter 11 Cases or converting any of the Chapter 11 Cases to a Chapter 7

case; (ii) the entry of an order appointing a Chapter 11 trustee in any of the Chapter 11 Cases;

(iii) the entry of an order granting any other claim superpriority status or a lien equal or superior

to the Replacement Liens granted to the Prepetition Agent (other than a Permitted Prior Lien) or

equal or superior to the Replacement Liens granted to Laureate, other than a Motion seeking

approval of an insurance premium financing program, pursuant to which such financing source

seeks liens solely on unearned insurance premiums in connection therewith; (iv) the entry of an

order granting any other claim superpriority status or a lien equal or superior to the Replacement

Liens granted to Edward Don (other than a Permitted Prior Lien), other than a Motion seeking

approval of an insurance premium financing program, pursuant to which such financing source

seeks liens solely on unearned insurance premiums in connection therewith; (v) the entry of an order staying, reversing, vacating or otherwise modifying this Final Order without the AR Lenders', Laureate's and Edward Don's prior written consent; (vi) the entry of an order in any of the Chapter 11 Cases appointing an examiner having enlarged powers beyond those set forth under Bankruptcy Code § 1106(a)(3) and (4); (vii) the entry of any order granting any relief from the automatic stay so as to allow a third party to proceed against material assets of any of the Debtors; (viii) the commencement by any of the Debtors of any action adverse to the Prepetition Agent or the AR Lenders inconsistent with the terms and conditions of this Final Order; (ix) any Debtor's failure to comply with the terms and conditions of any Order of this Court, including this Final Order, (x) any Debtor's failure to comply with the reporting requirements set forth in this Final Order or the Final DIP Order; or (xii) the occurrence of a default under the Final DIP Order (each, a "Default"). The Prepetition Agent, the AR Lenders, the DIP Lender, Laureate and/or Edward Don (as the case may be) shall provide notice of such default ("Default Notice") to counsel for the Debtors, the Statutory Committee, the Office of the Illinois Attorney General and the non-defaulting lenders as soon as practicable after the occurrence of such default, *provided, however*, the failure to provide the Default Notice shall not affect or impair the exercise of the Prepetition Agent's, the AR Lenders, the DIP Lender's, Laureate's or Edward Don's remedies hereunder. For the avoidance of doubt, the Statutory Committee's pending adversary proceeding against Laureate (Adv. Case No. 18-00261 (Bankr. N.D. Ill.)) or Edward Don (Adv. Case No. 18-0874 (Bankr. N.D. Ill.)) shall not constitute a Default or otherwise constitute cause to terminate the Debtors' use of Cash Collateral.

13.     Remedies.  Upon the occurrence of a Default, the Prepetition Agent, the AR Lenders and/or Laureate and/or Edward Don may (a) enjoin and prohibit the Debtors from using

24

Cash Collateral and/or other Collateral without further modification of the automatic stay pursuant to Bankruptcy Code § 362 which is hereby deemed modified and vacated to the extent necessary to permit such action, and (b) seek entry of an Order modifying the automatic stay pursuant to Bankruptcy Code § 362(a), to permit the Prepetition Agent, the AR Lenders, HUD or Edward Don (as the case may be) to exercise any other rights and remedies under the Prepetition Credit Documents, the HUD Documents, the Don Documents and this Final Order. Upon any Debtor's receipt of a Default Notice, it shall immediately cease making any disbursements except those already accrued in accordance with the Budget, subject to further order of the Court after notice and a hearing.

14.   _Payments_.  On or before the fourth business day of each week during the term of this Final Order, the Debtors shall make the weekly adequate protection payments to the AR Lenders as provided for in this Final Order; which amounts shall be applied against the AR Lenders' Prepetition Obligations in accordance with the terms of the Prepetition Credit Documents; _provided, however_, if it is subsequently determined the AR Lenders are not entitled to the payment of interest, fees or costs, such amounts will be applied to the outstanding principal balance of the AR Lenders' Prepetition Obligations; _provided, further, however_, no amounts shall be paid to the AR Lenders' attorneys and consultants prior to allowance of their respective fees and costs in accordance with ¶18 hereof.  In the event Debtors do not have sufficient Cash Collateral to make such weekly payments and have exhausted the DIP Financing (as defined in the Final DIP Order), it shall not be considered a Default hereunder provided the Debtors can establish "cause" to (i) MidCap, or (ii) this Court (upon Motion and after notice and a hearing).

15.   _Financial Reports_.  In addition to the reporting requirements set forth in ¶¶7 and 9 above, the Debtors are hereby required to deliver to the AR Lenders, Laureate and Edward Don,

such other financial and other information concerning the business and affairs of the Debtors as the AR Lenders and/or Laureate and/or Edward Don shall reasonably request from time to time, including, without limitation, weekly borrowing base certificates on each Wednesday (for the immediately preceding week). The Debtors shall cooperate with and permit the AR Lenders, Laureate and Edward Don to audit the Collateral at any reasonable times requested by the AR Lenders, Laureate and/or Edward Don. The Debtors shall further provide the AR Lenders, Laureate and Edward Don with detailed information as to the extent and composition of the Collateral and any collections thereon. Any information provided to the AR Lenders by the Debtors pursuant to this Final Order shall be contemporaneously shared with the Statutory Committee, the Office of the Illinois Attorney General and Laureate; *provided, however*, no provision in this Final Order shall be deemed to provide the Statutory Committee or Laureate or Edward Don with access to the Point Click Care system.

16.    <u>No Control</u>. By taking any actions pursuant to this Final Order, the Prepetition Agent, the AR Lenders, Laureate and Edward Don shall not: (a) be deemed to be in control of the operations or sale of the Debtors; or (b) be deemed to be acting as a "responsible person" or "owner or operator" with respect to the operation, management or sale of the Debtors.

17.    <u>Survival</u>. The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order, including without limitation (a) confirming any plan of reorganization (or plan of liquidation) in any of the Chapter 11 Cases; (b) converting any of the Chapter 11 Cases to a Chapter 7 case; or (c) dismissing any of the Chapter 11 Cases, and the terms and provisions of this Order as well as the Superpriority Claims and Replacement Liens granted pursuant to this Order and the Prepetition Credit Documents shall continue in full force and effect notwithstanding the entry of such order, and such Superpriority Claims and Replacement Liens

shall maintain their priority as provided by this Order until all AR Lenders' Prepetition Obligations, all amounts due Laureate, as successor in interest to HUD, all amounts due Edward Don and any other amounts due AR Lenders, Laureate and Edward Don are indefeasibly paid in full and discharged.

18.    <u>AR Lenders' Attorneys and Consultants</u>.  The AR Lenders may, in their sole discretion, retain attorneys and consultants to review business and legal matters pertaining to the business and property of the Debtors and to seek, by agreement among the Debtors, Laureate, and the Statutory Committee or pursuant to Order of the Court, recovery of reasonable amounts paid to such attorneys and consultants from the Debtors upon reasonable notice to the Notice Parties. Each of the Debtors are authorized and directed to permit the consultants of the AR Lenders to examine the respective corporate, financial and operating records, inspect the assets, properties, operations and affairs of the Debtors, visit any or all of the offices of the Debtors to discuss such matters with its officers, independent auditors, accountants or consultants (and the Debtors hereby authorize such independent auditors, accountants and consultant to discuss such matters with the AR Lenders' consultants), and the Debtors will cooperate with the AR Lenders' consultants in all reasonable respects.

19.    <u>Recoupment</u>.  This Final Order does not affect or impair the United States' Medicare recoupment rights, claims and/or defenses, including jurisdictional requirements and defenses arising under the Medicare Act. Further, nothing in this Final Order affects the Centers for Medicare & Medicaid Service' ("<u>CMS</u>") authority to (i) review and approve or deny Debtors' Medicare claims in the ordinary course, or (ii) determine overpayments for prepetition and postpetition claims in the ordinary course, subject, in each case, to the Debtors' rights and defenses concerning the same.  Further, nothing in this Final Order shall affect or impair the set-off or

recoupment rights, claims and/or defenses of the United States of America and all its federal agencies (collectively, the "Federal Agencies"). Finally, nothing in the Final Order shall affect or impair the rights of the Debtors, the Statutory Committee or any other party-in-interest (other than the AR Lenders), to oppose, object or defend against such recoupment and other rights, claims and/or defenses of the United States, HUD, CMS or any of the Federal Agencies.

20.    Recoupment. This Final Order does not affect or impair the State of Illinois' or its agencies' set-off or recoupment rights, claims and/or defenses. Likewise, nothing in this Final Order shall affect or impair the rights of the Debtors, the Statutory Committee, the Prepetition Agent, the AR Lenders or any other party-in-interest to oppose, object or defend against such set-off, recoupment and other rights, claims and/or defenses of the State of Illinois or any of its agencies.

21.    Debtors' Stipulations. Except as modified in this ¶21, the Debtors' Stipulations as to the AR Lenders and the Prepetition Agent shall be binding upon all parties-in-interest, including without limitation, the Debtors, Laureate, the DIP Lender and the Statutory Committee and shall be deemed to be binding on all parties-in-interest for all purposes in these Chapter 11 Cases and any subsequent Chapter 7 cases. Other than with respect to the Unencumbered Assets (defined below), the Prepetition Agent's liens on the AR Lenders' Collateral shall be deemed legal, valid, binding, properly perfected, not subject to defense, counterclaim, offset of any kind, subordination and otherwise unavoidable, and the AR Lenders, the AR Lenders' Prepetition Obligations and the Prepetition Agent's liens on the AR Lenders' Collateral shall not be subject to any other or further challenge by any party-in-interest seeking to exercise the rights of the Debtors' estates, including without, limitation, any successor thereto. Notwithstanding anything to the contrary contained herein or in any other Interim Order, the Prepetition Agent does not have valid perfected liens over

any of (x) the Debtors' Commercial Tort Claims as that term is defined in section 102(13) of Article 9 of the Uniform Commercial Code, (y) the Debtors' Fixtures as that term is defined in section 102(41) of Article 9 of the Uniform Commercial Code, or (z) the Debtors' vehicles, including, but not limited to, that certain 2013 Ford F150 owned by WCT Care, LLC (collectively, the "Unencumbered Assets").

22.     Final DIP Order.  Notwithstanding anything to the contrary contained in the Final DIP Order, the Debtors shall contemporaneously provide the Prepetition Agent and the Statutory Committee with copies of all documents any of them are required to provide the DIP Lender pursuant to the Final DIP Order.

23.     Final Order Binding.  The provisions of this Final Order shall be binding upon and inure to the benefit of the Prepetition Agent, the AR Lenders, Laureate, the DIP Lender, Edward Don and their successors and assigns, and the Debtors, and their successors and assigns, including any trustee or other fiduciary hereafter appointed in these Chapter 11 Cases as a legal representative of the Debtors or their estates.

24.     Marshaling.  The Prepetition Agent, the AR Lenders, Laureate and Edward Don shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any Collateral.

25.     **[RESERVED]**

26.     Further Assurances.  The Debtors are authorized to perform all acts, and execute and comply with the terms of such other documents, instruments and agreements in addition to the Prepetition Credit Documents, as the Prepetition Agent or the AR Lenders may reasonably require, or which otherwise may be deemed reasonably necessary by the Prepetition Agent or the AR Lenders to effectuate the terms and conditions of this Final Order and the Prepetition Credit

CHICAGO/#3252604.3

Documents, provided any such acts are not inconsistent with the terms of the Intercreditor Agreement or this Final Order.

27.     <u>Insurance; Maintenance of Property</u>.  Until the payment in full, in cash, of all amounts due the AR Lenders and Laureate, the Debtors shall maintain (i) insurance on the Collateral and the facilities to cover their assets from fire, theft and other damage, and (ii) professional liability insurance, all in compliance with, and to the extent required by, HUD Program Obligations.  The Debtors shall also maintain the Collateral and their businesses in good repair.

28.     <u>Collateral Rights</u>.  Until all of the AR Lenders' Prepetition Obligations have been indefeasibly paid and satisfied in full in immediately available funds and without further order of the Bankruptcy Court, in the event any party (including, without limitation, the DIP Lender) who holds a lien or security interest in any of the Collateral that is junior and/or subordinate to the liens and claims of the Prepetition Agent in such Collateral receives or is paid proceeds of the Collateral prior to the indefeasible payment and satisfaction in full of all AR Lenders' Prepetition Obligations (other than, for the avoidance of doubt, any proceeds received or paid pursuant to any Budget), such junior or subordinate lienholder shall be deemed to have received, and shall hold such Collateral proceeds in trust for the Prepetition Agent and the AR Lenders and shall immediately turnover to the Prepetition Agent such proceeds for application to the AR Lenders' Prepetition Obligations; *provided, however*, nothing contained in this ¶28 or any other Order of the Court shall preclude the DIP Lender from seeking entry of an Order, entered after notice and opportunity for a hearing, authorizing payments to the DIP Lender from proceeds of the AR Lender Priority Collateral prior to the indefeasible payment and satisfaction in full of all amounts due to the AR Lenders if (i) the Court determines the value of the AR Lender Priority Collateral exceeds the

amount due to the AR Lenders and (ii) the DIP Lender otherwise establishes its right to such

payments. Notwithstanding anything to the contrary contained herein or in any other Order of this

Court, the Prepetition Agent and the AR Lenders shall be entitled to assert any rights, claims and

defenses to the entry of such Order, all such rights, claims and defenses being specifically reserved.

Nothing herein shall be deemed to adversely impact or otherwise alter the rights of the DIP Lender

as to any senior liens it may have on property of the Debtors' estates that is not "Shared Collateral"

(as that term is defined in the Final DIP Order).

29.    Sales of Collateral.  Absent Court approval, the Debtors shall not sell, transfer,

lease, encumber, settle by compromise or otherwise dispose of any portion of the Collateral outside

the ordinary course of business.

30.    No Third Party Rights.  Except as explicitly provided for herein, this Final Order

does not create any rights for the benefit of any third party, creditor, equity holder or any direct,

indirect, or incidental beneficiary.

31.    Aged Accounts Receivable.  Without limiting in any way the reporting obligations

of the Debtors set forth elsewhere in this Final Order, the Debtors shall notify Prepetition Agent,

Laureate, Edward Don and the Statutory Committee in writing promptly (but in any event within

five (5) Business Days) upon (i) receipt of any voucher respecting accounts receivable aged more

than two hundred ten (210) days, which notification shall contain the amount of such payment(s),

the Operating Debtor and facility that performed such services, the dates of service to which such

payment relates, the name(s) of the account debtor(s) making such payment and the name of the

payee; and (ii) notification from any entity (including any managed care organization) regarding

the amount and timing of any payments of accounts receivable aged more than two hundred ten

(210) days.

32.     Section 552(b).  The Prepetition Agent, the AR Lenders, Laureate and Edward Don shall be entitled to all of the rights and benefits of §552(b) of the Bankruptcy Code, and the "equities of the case" exception under §552(b) of the Bankruptcy Code shall not apply with respect to proceeds, product, offspring or profits of any of the Collateral.

33.     Joint and Several Liability.  Nothing in this Final Order shall be construed to (i) constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, the Debtors shall be jointly and severally liable for their obligations under this Final Order, (ii) modify or amend any of the Debtor's obligations under the Prepetition Credit Documents or the HUD Loan Documents or the Don Documents.

34.     Rights Preserved.  Other than as expressly set forth herein, any other rights, claims or privileges (whether legal, equitable or otherwise) of the Prepetition Agent, the AR Lenders, HUD, Edward Don, the Statutory Committee and/or the Debtors are preserved.

35.     No Waiver by Failure to Seek Relief.  The failure of the Prepetition Agent, the AR Lenders, Laureate or Edward Don to seek relief or otherwise exercise their respective rights and remedies under this Final Order, the Prepetition Credit Documents, the HUD Documents, the Don Documents or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise.

36.     Binding Effect of Final Order.   Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Final Order shall become valid and binding upon and inure to the benefit of the Debtors, the Prepetition Agent, the AR Lenders, Laureate, as successor in interest to HUD with respect to the Assigned Claims, Edward Don, all other creditors of any of the Debtors, the Statutory Committee and all

32

other parties-in-interest and their respective successors and assigns, including any trustee or other

fiduciary hereafter appointed in any of the Chapter 11 Cases.

37.     **[RESERVED]**

38.     <u>Final Order Controls</u>.  In the event of any inconsistency between the terms and

conditions of the Interim Order and this Final Order, the provisions of this Final Order shall govern

and control.

39.     <u>Effect of this Final Order</u>.  This Final Order shall constitute findings of fact and

conclusions of law pursuant to Bankruptcy Rules 7052 and 9014(c) and shall take effect and be

enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

40.     <u>No Waiver</u>.  Nothing contained in this Final Order shall prejudice, impair or

otherwise affect (i) the claims asserted in the Statutory Committee's pending adversary proceeding

against Laureate (Adv. Case No. 18-00261 (Bankr. N.D. Ill.)) or Edward Don (Adv. Case No. 18-

0874 (Bankr. N.D. Ill.)) or (ii) the rights of any party-in-interest to object to the Retained

Regulatory Claims.

41.     <u>SH Care, LLC</u>.  Notwithstanding anything to the contrary contained in any Orders

of this Court governing cash management, the Debtors are authorized and directed to take any

actions reasonably necessary to prevent funds payable to its non-Debtor affiliate, SH Care, LLC,

from being transferred to any account owned by any of the Debtors.  Notwithstanding the

foregoing, in the event any Debtor receives payment(s) on account of services previously rendered

by SH Care, LLC, it shall immediately remit such payment(s) to the Prepetition Agent and such

proceeds shall not be considered property of the Debtors' estates.  Contemporaneous with making

such payment, the Debtors will immediately provide (or cause SH Care, LLC to provide) all

documentation in their respective possession reasonably relating to such services (e.g., warrants,

vouchers, checks or remittance advices from the account payor, documentation as to the services

giving rise to the account, etc.) to counsel for HUD, the Statutory Committee, Edward Don and

the Prepetition Agent. If no objection to such payment is received by the Debtors and the

Prepetition Agent within five business days of the Debtors (or SH Care, LLC) providing such

documentation, such payment shall be deemed to be final and not otherwise subject to

disgorgement or attack. To the extent an objection is timely asserted in which a party alleges that

such payment was property of the Debtors' estates, this Court shall retain jurisdiction over this

matter in the event the parties are unable to reach resolution.

    42.    <u>Development Specialists, Inc.</u>

    (a)    In furtherance of that certain *Order Granting Motion for Employment of*

*Developmental Specialists, Inc. as Financial Advisors to the Debtors* [Dkt. No. 124] and the

Engagement Letter attached to the *Debtors' Motion for Employment of Developmental Specialists,*

*Inc. as Financial Advisors to the Debtors* [Dkt. No. 118], Development Specialists Inc. ("<u>DSI</u>")

shall, to the extent not already completed, complete the following tasks on behalf of the Operating

Debtors: (i) update weekly budget to actual, and provide same to the AR Lenders, HUD, Edward

Don and the Statutory Committee; (ii) complete Monthly Operating Reports for each of the

Debtors and timely file Monthly Operating Reports thereafter; (iii) work with TM Healthcare to

ensure all accounts payable are entered, and correctly separated into pre- and post-petition

payables; (iv) provide an aging of the pre- and post-petition accounts payable to the AR Lenders,

Laureate, Edward Don and the Statutory Committee; (v) work with TM Healthcare to ensure all

accounts receivable are posted within 48 hours of receipt of remittance advices; (vi) provide a

weekly aging of accounts receivable to the AR Lenders, Laureate, Edward Don and the Statutory

Committee; (vii) provide a complete listing of all bank accounts, including those holding patient

trust monies, to the AR Lenders, Laureate, Edward Don and the Statutory Committee; (viii) provide copies of all bank statements with the Monthly Operating Reports, or separately (to the AR Lenders, Laureate, Edward Don and the Statutory Committee), for all bank accounts; and (ix) work with TM Healthcare to sync budget line items to reporting line items.

(b)      This Court shall subsequently rule (upon application and after notice and a hearing) whether the cost of DSI's services will be a dollar-for-dollar deduct from amounts otherwise payable to TM Healthcare.

(c)      DSI shall use its reasonable efforts to work with the financial consultants retained by the AR Lenders, Laureate, Edward Don and the Statutory Committee to allow each party access to the information required to be provided for herein. Without limiting the generality of the foregoing, at a minimum, DSI also shall provide copies of such deliverables to Laureate.

43.      _Professional Fees_. For the avoidance of doubt, any carve-outs described in any of the prior Interim Orders have been fully funded prior to the term of this Final Order. Payments to be made to professionals retained by the Debtors or the Statutory Committee may only be made after the then due weekly adequate protection payments are made to the AR Lenders as described in the Budget.

44.      **[RESERVED]**

45.      _Payments for Goods and Services Received Prior to March 15, 2018_. Prior to making any disbursements during the term of this Final Order for goods received or services rendered prior to March 15, 2018, the Debtors shall provide the Prepetition Agent with a report indicating the amount of such disbursement(s) and the date of the underlying invoice(s) for such goods or services. The Prepetition Agent shall, only with respect to good received or services rendered prior to March 15, 2018, have two business days to review such information; if the

CHICAGO/#3252604.3

Prepetition Agent fails to object to such payment(s) within such 2 business day period, the Debtors shall be authorized to make such payment(s).  If an objection is timely asserted (via written communication to counsel for the Debtors and the Statutory Committee), the Debtors shall (i) promptly respond to any inquiry from the Prepetition Agent regarding such proposed payment(s), including, without limitation, by providing copies of the invoice(s) to be paid, and (ii) not make any payment(s) subject to any timely asserted objection without agreement of the Prepetition Agent or subsequent Order of this Court.

CHICAGO/#3252604.3

46.    <u>Retention of Jurisdiction</u>. The Court has and will retain jurisdiction to enforce this

Final Order according to its terms.

DATE:  February 22, 2019

ENTER:

_____
Honorable Janet S. Baer
United States Bankruptcy Judge


STIPULATED AND AGREED:

By:  /s/ David K. Welch
    Burke Warren, MacKay & Seritella, P.C.
    330 N. Wabash, Suite 2100
    Chicago, IL  60611-3607

    ***Counsel for the Debtors***


STIPULATED AND AGREED:

By:  /s/ Shelly A. DeRousse
    Freeborn & Peters
    311 South Wacker Drive
    Suite 3000
    Chicago, IL  60606

    ***Counsel for the Statutory Committee***

STIPULATED AND AGREED:

By:  /s/ Lauren Newman
    Thompson Coburn LLP
    55 E. Monroe Street, 37th Floor
    Chicago, IL  60603

***Counsel for Edward Don***


STIPULATED AND AGREED:

By:  /s/ Michael M. Eidelman
    Vedder Price P.C.
    222 N. LaSalle St., Suite 2600
    Chicago, IL  60601

    ***Counsel for the Prepetition Agent and
    the AR Lenders***


STIPULATED AND AGREED:

By:  /s/Craig E. Reimer
    Mayer Brown LLP
    71 South Wacker Drive
    Suite 3000
    Chicago, IL  60606

    ***Counsel for Laureate and the DIP
    Lender***

# **<u>Group Exhibit A</u>**

**JLM Financial Healthcare**
**Cash Flow Projections**

| Week ending | 2/23/2019 (1) | 3/2/2019 (2) | 3/9/2019 (3) | 3/16/2019 (4) | 3/23/2019 (5) | 3/30/2019 (6) | 4/6/2019 (7) | 4/13/2019 (8) | 4/20/2019 (9) | 4/27/2019 (10) | 5/4/2019 (11) | 5/11/2019 (12) | 5/18/2019 (13) | 5/25/2019 (14) | 14 Week Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CASH RECEIPTS** | | | | | | | | | | | | | | | |
| Collections | 1,235,000 | 1,235,000 | 1,235,000 | 960,000 | 960,000 | 960,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 14,585,000 |
| **Total Estimated Cash Receipts** | 1,235,000 | 1,235,000 | 1,235,000 | 960,000 | 960,000 | 960,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 14,585,000 |
| **CASH DISBURSEMENTS** | | | | | | | | | | | | | | | |
| **Operating Disbursements** | | | | | | | | | | | | | | | |
| Payroll | 450,000 | 1,200,000 | - | 1,200,000 | - | 1,200,000 | - | 1,200,000 | - | 900,000 | 300,000 | 900,000 | 300,000 | 900,000 | 8,550,000 |
| Supplies | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 1,680,000 |
| Insurance - Medical and Dental | 140,000 | 25,000 | 25,000 | 25,000 | 140,000 | 25,000 | 25,000 | 25,000 | 140,000 | 25,000 | 25,000 | 25,000 | 25,000 | 140,000 | 810,000 |
| Insurance - Liability | - | - | - | 280,000 | - | - | - | - | 280,000 | - | - | - | 280,000 | - | 840,000 |
| Union Dues/Healthcare/Pension | 70,000 | - | - | - | 70,000 | - | - | - | 70,000 | - | - | - | 70,000 | - | 280,000 |
| TM Management Fee | - | 105,000 | - | 105,000 | - | 105,000 | - | - | 105,000 | - | 105,000 | - | 105,000 | - | 630,000 |
| Health and Family Services-Bed Tax | 150,000 | - | 150,000 | - | - | - | 150,000 | - | 150,000 | - | - | - | 150,000 | - | 750,000 |
| Rent | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Utilities | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 455,000 |
| Leases | 5,350 | - | 5,350 | - | 5,350 | - | 5,350 | - | 5,350 | - | 5,350 | - | 5,350 | - | 37,447 |
| Facility compliance | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 210,000 |
| Data processing | 30,000 | - | - | - | 30,000 | - | - | - | 30,000 | - | - | - | 30,000 | - | 120,000 |
| Maintenance | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 140,000 |
| Transactional Fees | - | 20,000 | - | - | - | - | 20,000 | - | - | - | 20,000 | - | - | - | 60,000 |
| Miscellaneous Expense | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 105,000 |
| **Total Operating Disbursements** | 1,030,350 | 1,535,000 | 365,350 | 1,795,000 | 430,350 | 1,515,000 | 385,350 | 1,410,000 | 965,350 | 1,110,000 | 640,350 | 1,110,000 | 1,150,350 | 1,225,000 | 14,667,447 |
| **Other Disbursements** | | | | | | | | | | | | | | | |
| MedCap | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 140,000 |
| DIP costs and fees | 130,000 | 50,000 | 150,000 | - | - | 50,000 | - | - | - | - | - | - | - | - | 380,000 |
| Professional fees | 150,000 | - | - | 50,000 | - | - | - | - | 50,000 | - | - | - | 50,000 | - | 300,000 |
| Trustee Fees | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Other Disbursements** | 290,000 | 60,000 | 160,000 | 60,000 | 10,000 | 60,000 | 10,000 | 10,000 | 60,000 | 10,000 | 10,000 | 10,000 | 60,000 | 10,000 | 820,000 |
| **Total Disbursements** | 1,320,350 | 1,595,000 | 525,350 | 1,855,000 | 440,350 | 1,575,000 | 395,350 | 1,420,000 | 1,025,350 | 1,120,000 | 650,350 | 1,120,000 | 1,210,350 | 1,235,000 | 15,487,447 |
| **Change for the Period** | (85,350) | (360,000) | 709,650 | (895,000) | 519,650 | (615,000) | 604,650 | (420,000) | (25,350) | (120,000) | 349,650 | (120,000) | (210,350) | (235,000) | (902,447) |
| Beginning Cash | 245,204 | 159,854 | 25,000 | 734,650 | 25,000 | 544,650 | 25,000 | 629,650 | 209,650 | 184,301 | 64,301 | 413,951 | 293,951 | 83,601 | 245,204 |
| Liquidity before DIP financing | 159,854 | (200,146) | 734,650 | (160,350) | 544,650 | (70,350) | 629,650 | 209,650 | 184,301 | 64,301 | 413,951 | 293,951 | 83,601 | (151,399) | (657,244) |
| DIP Financing - Borrowing | - | 225,146 | - | 185,350 | - | 95,350 | - | - | - | - | - | - | - | 176,399 | 682,244 |
| **Ending Cash** | 159,854 | 25,000 | 734,650 | 25,000 | 544,650 | 25,000 | 629,650 | 209,650 | 184,301 | 64,301 | 413,951 | 293,951 | 83,601 | 25,000 | 25,000 |
| Cumulative DIP financing balance | 550,000 | 775,146 | 775,146 | 960,496 | 960,496 | 1,055,845 | 1,055,845 | 1,055,845 | 1,055,845 | 1,055,845 | 1,055,845 | 1,055,845 | 1,055,845 | 1,232,244 | 1,232,244 |

**Notes:**

1) This financial analysis is to be used for planning purposes only.  These are projections and as such make substantial use of estimates.

2) They are unaudited and there is no guarantee of material accuracy.  These are NOT GAAP.

3) This report is based upon PPD (Per Patient Day) estimates .  True results may differ materially from planned with respect to census and PPD cost.

BT Bourbonnais Care, LLC
Cash Flow Projections

| Week ending | 2/23/2019 | 3/2/2019 | 3/9/2019 | 3/16/2019 | 3/23/2019 | 3/30/2019 | 4/6/2019 | 4/13/2019 | 4/20/2019 | 4/27/2019 | 5/4/2019 | 5/11/2019 | 5/18/2019 | 5/25/2019 | 14 Week Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | |
| **CASH RECEIPTS** | | | | | | | | | | | | | | | |
| Collections | 146,500 | 146,500 | 146,500 | 114,000 | 114,000 | 114,000 | 119,000 | 119,000 | 119,000 | 119,000 | 119,000 | 119,000 | 119,000 | 119,000 | 1,733,500 |
| **Total Estimated Cash Receipts** | 146,500 | 146,500 | 146,500 | 114,000 | 114,000 | 114,000 | 119,000 | 119,000 | 119,000 | 119,000 | 119,000 | 119,000 | 119,000 | 119,000 | 1,733,500 |
| **CASH DISBURSEMENTS** | | | | | | | | | | | | | | | |
| **Operating Disbursements** | | | | | | | | | | | | | | | |
| Payroll | 35,500 | 125,000 | | 125,000 | | 125,000 | | 125,000 | | 90,000 | 35,000 | 90,000 | 35,000 | 90,000 | 875,000 |
| Supplies | 13,750 | 13,750 | 13,750 | 13,750 | 13,750 | 13,750 | 13,750 | 13,750 | 13,750 | 13,750 | 13,750 | 13,750 | 13,750 | 13,750 | 192,500 |
| Insurance - Medical and Dental | 15,556 | 13,750 | 13,750 | 22,500 | 15,556 | 13,750 | | | 15,556 | | | | 22,500 | 15,556 | 90,000 |
| Insurance - Liability | 2,778 | 2,778 | 2,778 | 2,778 | | 2,778 | 2,778 | 2,778 | | 2,778 | | 2,778 | 2,778 | | 67,500 |
| Union Dues/Healthcare/Pension | 8,000 | | | | 8,000 | | | | 8,000 | | | | 8,000 | | 32,000 |
| TM Management Fee | 12,455 | 12,455 | | 12,469 | | 12,469 | | | | 12,495 | 12,495 | | 12,495 | | 74,878 |
| Health and Family Services-Bed Tax | | | | | | | | | | | | | | | |
| Rent | | | | | | | | | | | | | | | |
| Utilities | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 50,556 |
| Leases | 594 | | 594 | | 594 | | 594 | | 594 | | 594 | | 594 | | 4,161 |
| Facility compliance | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 21,000 |
| Data processing | 3,333 | | | | 3,333 | | | | 3,333 | | | | 3,333 | | 13,333 |
| Maintenance | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 14,000 |
| Transactional Fees | 2,000 | 2,000 | | | | | 2,000 | | | | 2,000 | | | | 6,000 |
| Miscellaneous Expense | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 10,500 |
| **Total Operating Disbursements** | 83,594 | 162,844 | 23,983 | 183,358 | 48,094 | 160,858 | 25,983 | 148,389 | 83,089 | 113,389 | 73,478 | 113,389 | 105,312 | 126,167 | 1,451,928 |
| **Other Disbursements** | | | | | | | | | | | | | | | |
| MidCap | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 15,556 |
| DIP costs and fees | | | | | | | | | | | | | | | |
| Professional fees | 14,444 | 5,556 | | 5,556 | | 5,556 | | | 5,556 | | | | 5,556 | | 42,222 |
| Trustee Fees | 15,500 | | 15,500 | | | | | | | | | | | | 31,000 |
| **Total Other Disbursements** | 31,056 | 6,667 | 16,611 | 6,667 | 1,111 | 6,667 | 1,111 | 1,111 | 6,667 | 1,111 | 1,111 | 1,111 | 6,667 | 1,111 | 88,778 |
| **Total Disbursements** | 114,650 | 169,511 | 40,594 | 190,024 | 49,206 | 167,524 | 27,094 | 149,500 | 89,756 | 114,500 | 74,589 | 114,500 | 111,978 | 127,278 | 1,540,705 |
| **Change for the Period** | 31,850 | (23,011) | 105,906 | (76,024) | 64,794 | (53,524) | 91,906 | (30,500) | 29,244 | 4,500 | 44,411 | 4,500 | 7,022 | (8,278) | 192,795 |
| Beginning Cash | 1,000 | 32,850 | 9,839 | 115,745 | 15,562 | 80,356 | 1,000 | 92,906 | 62,406 | 51,650 | 6,150 | 50,560 | 5,060 | 12,082 | 1,000 |
| Liquidity before DIP Financing | 32,850 | 9,839 | 115,745 | 39,720 | 80,356 | 26,832 | 92,906 | 62,406 | 91,650 | 56,150 | 50,560 | 55,060 | 12,082 | 3,804 | 193,795 |
| DIP Financing - Borrowing | | | | (24,159) | | (25,832) | | | (40,000) | (50,000) | | (50,000) | | (1,026) | (191,017) |
| **Ending Cash** | 32,850 | 9,839 | 115,745 | 15,562 | 80,356 | 1,000 | 92,906 | 62,406 | 51,650 | 6,150 | 50,560 | 5,060 | 12,082 | 2,778 | 2,778 |

Notes:
1) This financial analysis is to be used for planning purposes only. These are projections and as such make substantial use of estimates.
2) They are unaudited and there is no guarantee of material accuracy. These are NOT GAAP.
3) This report is based upon PPD (Per Patient Day) estimates. True results may differ materially from planned with respect to census and PPD cost.

CC Care, LLC
Cash Flow Projections

| Week ending | 2/23/2019 1 | 3/2/2019 2 | 3/9/2019 3 | 3/16/2019 4 | 3/23/2019 5 | 3/30/2019 6 | 4/6/2019 7 | 4/13/2019 8 | 4/20/2019 9 | 4/27/2019 10 | 5/4/2019 11 | 5/11/2019 12 | 5/18/2019 13 | 5/25/2019 14 | 14 Week Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CASH RECEIPTS** | | | | | | | | | | | | | | | |
| Collections | 226,500 | 226,500 | 226,500 | 176,000 | 176,000 | 176,000 | 183,000 | 183,000 | 183,000 | 183,000 | 183,000 | 183,000 | 183,000 | 183,000 | 2,671,500 |
| **Total Estimated Cash Receipts** | 226,500 | 226,500 | 226,500 | 176,000 | 176,000 | 176,000 | 183,000 | 183,000 | 183,000 | 183,000 | 183,000 | 183,000 | 183,000 | 183,000 | 2,675,500 |
| **CASH DISBURSEMENTS** | | | | | | | | | | | | | | | |
| **Operating Disbursements** | | | | | | | | | | | | | | | |
| Payroll | 111,000 | 215,000 | | 215,000 | | 215,000 | | 215,000 | | 163,000 | 52,000 | 163,000 | 52,000 | 163,000 | 1,564,000 |
| Supplies | 24,200 | 24,200 | 24,200 | 24,200 | 24,200 | 24,200 | 24,200 | 24,200 | 24,200 | 24,200 | 24,200 | 24,200 | 24,200 | 24,200 | 338,800 |
| Insurance - Medical and Dental | 15,556 | 2,778 | 2,778 | 2,778 | 15,556 | 2,778 | 2,778 | 2,778 | 15,556 | 2,778 | 2,778 | 2,778 | 2,778 | 15,556 | 90,000 |
| Insurance - Liability | | | | 53,000 | | | | | 53,000 | | | | 53,000 | | 159,000 |
| Union Dues/Healthcare/Pension | 10,000 | | | | 10,000 | | | | 10,000 | | | | 10,000 | | 40,000 |
| TM Management Fee | | 19,257 | | 19,250 | | 19,250 | | | 19,215 | | 19,215 | | 19,215 | | 115,602 |
| Health and Family Services-Bed Tax | 28,000 | | 28,000 | | | | 28,000 | | 28,000 | | | | 28,000 | | 140,000 |
| Rent | | | | | | | | | | | | | | | |
| Utilities | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 50,556 |
| Leases | 594 | | 594 | | 594 | | 594 | | 594 | | 594 | | 594 | | 4,161 |
| Facility compliance | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 35,000 |
| Data processing | 3,333 | | | | 3,333 | | | | 3,333 | | | | 3,333 | | 13,333 |
| Maintenance | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 21,000 |
| Transactional Fees | | 2,500 | | | | | 2,500 | | | | 2,500 | | | | 7,500 |
| Miscellaneous Expense | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 14,000 |
| **Total Operating Disbursements** | 201,294 | 272,346 | 64,183 | 322,839 | 62,294 | 269,839 | 66,683 | 250,589 | 162,509 | 198,589 | 109,898 | 198,589 | 201,732 | 211,367 | 2,592,752 |
| **Other Disbursements** | | | | | | | | | | | | | | | |
| MidCap | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 15,556 |
| DIP costs and fees | 14,444 | 5,556 | | 5,556 | | 5,556 | | | 5,556 | | | | 5,556 | | 42,222 |
| Professional fees | 26,500 | | 26,500 | | | | | | | | | | | | 53,000 |
| Trustee Fees | | | | | | | | | | | | | | | |
| **Total Other Disbursements** | 42,056 | 6,667 | 27,611 | 6,667 | 1,111 | 6,667 | 1,111 | 1,111 | 6,667 | 1,111 | 1,111 | 1,111 | 6,667 | 1,111 | 110,778 |
| **Total Disbursements** | 243,350 | 279,013 | 91,794 | 329,506 | 63,406 | 276,506 | 67,794 | 251,700 | 169,176 | 199,700 | 111,009 | 199,700 | 208,398 | 212,478 | 2,703,530 |
| **Change for the Period** | (16,850) | (52,513) | 134,706 | (153,506) | 112,594 | (100,506) | 115,206 | (68,700) | 13,824 | (16,700) | 71,991 | (16,700) | (25,398) | (29,478) | (32,030) |
| Beginning Cash | 27,245 | 10,395 | 1,000 | 135,706 | 1,000 | 103,594 | 3,089 | 118,295 | 49,595 | 63,418 | 11,718 | 83,709 | 17,009 | 1,611 | 27,245 |
| Liquidity before DIP financing | 10,395 | (42,118) | 135,706 | (17,800) | 113,594 | 3,089 | 118,295 | 49,595 | 63,418 | 36,718 | 83,709 | 67,009 | (8,389) | (27,867) | (4,785) |
| DIP Financing - Borrowing | - | 43,118 | - | 18,800 | (10,000) | - | - | - | - | (25,000) | - | (50,000) | 10,000 | 30,645 | 7,562 |
| **Ending Cash** | 10,395 | 1,000 | 135,706 | 1,000 | 103,594 | 3,089 | 118,295 | 49,595 | 63,418 | 11,718 | 83,709 | 17,009 | 1,611 | 2,778 | 2,778 |

Notes:
1) This financial analysis is to be used for planning purposes only. These are projections and as such make substantial use of estimates.
2) They are unaudited and there is no guarantee of material accuracy. These are NOT GAAP.
3) This report is based upon PPD (Per Patient Day) estimates . True results may differ materially from planned with respect to census and PPD cost.

**CT Care, LLC**
**Cash Flow Projections**

| Week ending | 2/23/2019 (1) | 3/2/2019 (2) | 3/9/2019 (3) | 3/16/2019 (4) | 3/23/2019 (5) | 3/30/2019 (6) | 4/6/2019 (7) | 4/13/2019 (8) | 4/20/2019 (9) | 4/27/2019 (10) | 5/4/2019 (11) | 5/11/2019 (12) | 5/18/2019 (13) | 5/25/2019 (14) | 14 Week Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CASH RECEIPTS** | | | | | | | | | | | | | | | |
| Collections | 116,000 | 116,000 | 116,000 | 90,000 | 90,000 | 90,000 | 94,000 | 94,000 | 94,000 | 94,000 | 94,000 | 94,000 | 94,000 | 94,000 | 1,370,000 |
| **Total Estimated Cash Receipts** | 116,000 | 116,000 | 116,000 | 90,000 | 90,000 | 90,000 | 94,000 | 94,000 | 94,000 | 94,000 | 94,000 | 94,000 | 94,000 | 94,000 | 1,370,000 |
| **CASH DISBURSEMENTS** | | | | | | | | | | | | | | | |
| **Operating Disbursements** | | | | | | | | | | | | | | | |
| Payroll | 26,000 | 95,000 | | 95,000 | | 95,000 | | 95,000 | | 69,000 | 26,000 | 69,000 | 26,000 | 69,000 | 665,000 |
| Supplies | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 112,000 |
| Insurance - Medical and Dental | 15,556 | 2,778 | 2,778 | 2,778 | 15,556 | 2,778 | 2,778 | 2,778 | 15,556 | 2,778 | 2,778 | 2,778 | 15,556 | 2,778 | 90,000 |
| Insurance - Liability | | | | | | | 23,500 | | 23,500 | | | | 23,500 | | 70,500 |
| Union Dues/Healthcare/Pension | | | | | 6,000 | | | | 6,000 | | | | 6,000 | 6,000 | 24,000 |
| TM Management Fee | 9,862 | 9,862 | | 9,844 | | 9,844 | | | 9,870 | | 9,870 | | | | 59,160 |
| Health and Family Services-Bed Tax | 21,000 | | 21,000 | 21,000 | | | | | 21,000 | | | | 21,000 | | 105,000 |
| Rent | | | | | | | | | | | | | | | |
| Utilities | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 50,556 |
| Leases | 594 | | 594 | | 594 | | 594 | | 594 | | 594 | | 594 | | 4,161 |
| Facility compliance | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 21,000 |
| Data processing | | | | | 3,333 | | | | 3,333 | | | | | 6,666 | 13,333 |
| Maintenance | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 14,000 |
| Transactional Fees | | 2,500 | | 2,500 | | | | | | | 2,500 | | | | 7,500 |
| Miscellaneous Expense | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 10,500 |
| **Total Operating Disbursements** | 87,344 | 125,001 | 39,233 | 145,983 | 40,344 | 122,483 | 41,733 | 112,639 | 94,714 | 86,639 | 56,603 | 86,639 | 107,937 | 99,417 | 1,246,710 |
| **Other Disbursements** | | | | | | | | | | | | | | | |
| MedCap | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 15,556 |
| DIP costs and fees | | | | | | | | | | | | | | | |
| Professional fees | 14,444 | 5,556 | | 5,556 | | 5,556 | | | 5,556 | | | | 5,556 | | 42,222 |
| Trustee Fees | 12,500 | | 12,500 | | | | | | | | | | | | 25,000 |
| **Total Other Disbursements** | 28,056 | 6,667 | 13,611 | 6,667 | 1,111 | 6,667 | 1,111 | 1,111 | 6,667 | 1,111 | 1,111 | 1,111 | 6,667 | 1,111 | 82,778 |
| **Total Disbursements** | 115,400 | 131,668 | 52,844 | 152,649 | 41,456 | 129,149 | 42,844 | 113,750 | 101,381 | 87,750 | 57,714 | 87,750 | 114,603 | 100,528 | 1,329,487 |
| **Change for the Period** | 600 | (15,668) | 63,156 | (62,649) | 48,544 | (39,149) | 51,156 | (19,750) | (7,381) | 6,250 | 36,286 | 6,250 | (20,603) | (6,528) | 40,513 |
| Beginning Cash | 17,000 | 17,600 | 1,932 | 65,088 | 2,438 | 50,983 | 11,834 | 62,989 | 33,239 | 15,858 | 12,108 | 38,394 | 44,644 | 24,040 | 17,000 |
| Liquidity before DIP Financing | 17,600 | 1,932 | 65,088 | 2,438 | 50,983 | 11,834 | 62,989 | 43,239 | 25,858 | 22,108 | 48,394 | 44,644 | 24,040 | 17,513 | 57,513 |
| DIP Financing - Borrowing | | | | | | | | (10,000) | (10,000) | (10,000) | (10,000) | | | (14,735) | (54,735) |
| **Ending Cash** | 17,600 | 1,932 | 65,088 | 2,438 | 50,983 | 11,834 | 62,989 | 33,239 | 15,858 | 12,108 | 38,394 | 44,644 | 24,040 | 2,778 | 2,778 |

**Notes:**

1) This financial analysis is to be used for planning purposes only. These are projections and as such make substantial use of estimates.
2) They are unaudited and there is no guarantee of material accuracy. These are NOT GAAP.
3) This report is based upon PPD (Per Patient Day) estimates. True results may differ materially from planned with respect to census and PPD cost.

**FT Care, LLC**
**Cash Flow Projections**

| Week ending | 2/23/2019 (1) | 3/2/2019 (2) | 3/9/2019 (3) | 3/16/2019 (4) | 3/23/2019 (5) | 3/30/2019 (6) | 4/6/2019 (7) | 4/13/2019 (8) | 4/20/2019 (9) | 4/27/2019 (10) | 5/4/2019 (11) | 5/11/2019 (12) | 5/18/2019 (13) | 5/25/2019 (14) | 14 Week Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CASH RECEIPTS** | | | | | | | | | | | | | | | |
| Collections | 93,000 | 93,000 | 93,000 | 72,500 | 72,500 | 72,500 | 75,500 | 75,500 | 75,500 | 75,500 | 75,500 | 75,500 | 75,500 | 75,500 | 1,100,500 |
| **Total Estimated Cash Receipts** | 93,000 | 93,000 | 93,000 | 72,500 | 72,500 | 72,500 | 75,500 | 75,500 | 75,500 | 75,500 | 75,500 | 75,500 | 75,500 | 75,500 | 1,100,500 |
| **CASH DISBURSEMENTS** | | | | | | | | | | | | | | | |
| **Operating Disbursements** | | | | | | | | | | | | | | | |
| Payroll | 25,000 | 95,000 | | 95,000 | | 95,000 | | 95,000 | | 70,000 | 25,000 | 70,000 | 25,000 | 70,000 | 665,000 |
| Supplies | 7,100 | 7,100 | 7,100 | 7,100 | 7,100 | 7,100 | 7,100 | 7,100 | 7,100 | 7,100 | 7,100 | 7,100 | 7,100 | 7,100 | 99,400 |
| Insurance - Medical and Dental | 15,556 | 2,778 | 2,778 | 2,778 | 15,556 | 2,778 | 2,778 | 2,778 | 15,556 | 2,778 | 2,778 | 2,778 | 2,778 | 15,556 | 90,000 |
| Insurance - Liability | | | | | | | | | | | | | | | |
| Union Dues/Healthcare/Pension | | | | 19,000 | | | | | 19,000 | | | | 19,000 | | 57,000 |
| TM Management Fee | 8,000 | | | | 8,000 | | | | 8,000 | | | | 8,000 | | 32,000 |
| Health and Family Services-Bed Tax | | 7,907 | | 7,930 | | 7,930 | | | 7,928 | | 7,928 | | 7,928 | | 47,549 |
| Rent | 18,000 | | 18,000 | | | | 18,000 | | 18,000 | | | | 18,000 | | 90,000 |
| Utilities | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 50,556 |
| Leases | 594 | | 594 | | 594 | | 594 | | 594 | | 594 | | 594 | | 4,161 |
| Facility compliance | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 21,000 |
| Data processing | 3,333 | | | | 3,333 | | | | 3,333 | | | | 3,333 | | 13,333 |
| Maintenance | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 14,000 |
| Transactional fees | | 2,000 | | | | | 2,000 | | | | 2,000 | | | | 6,000 |
| Miscellaneous Expense | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 10,500 |
| **Total Operating Disbursements** | 84,444 | 121,646 | 35,333 | 138,669 | 41,444 | 119,669 | 37,333 | 111,739 | 86,372 | 86,739 | 52,261 | 86,739 | 98,594 | 99,517 | 1,200,498 |
| **Other Disbursements** | | | | | | | | | | | | | | | |
| MidCap | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 15,556 |
| DIP costs and fees | | | | | | | | | | | | | | | |
| Professional fees | 14,444 | 5,556 | | 5,556 | | 5,556 | | | 5,556 | | | | 5,556 | | 42,222 |
| Trustee Fees | 12,500 | | 12,500 | | | | | | | | | | | | 25,000 |
| **Total Other Disbursements** | 28,056 | 6,667 | 13,611 | 6,667 | 1,111 | 6,667 | 1,111 | 1,111 | 6,667 | 1,111 | 1,111 | 1,111 | 6,667 | 1,111 | 82,778 |
| **Total Disbursements** | 112,500 | 128,312 | 48,944 | 145,335 | 42,556 | 126,335 | 38,444 | 112,850 | 93,039 | 87,850 | 53,372 | 87,850 | 105,261 | 100,628 | 1,283,276 |
| **Change for the Period** | (19,500) | (35,312) | 44,056 | (72,835) | 29,944 | (53,835) | 37,056 | (37,350) | (17,539) | (12,350) | 22,128 | (12,350) | (29,761) | (25,128) | (182,776) |
| Beginning Cash | 40,000 | 20,500 | 7,229 | 51,284 | 1,000 | 30,944 | 1,000 | 38,056 | 706 | 3,167 | 817 | 22,945 | 10,595 | 834 | 40,000 |
| Liquidity before DIP Financing | 20,500 | (14,812) | 51,284 | (21,551) | 30,944 | (22,891) | 38,056 | 706 | (16,833) | (9,183) | 22,945 | 10,595 | (19,166) | (24,293) | (142,776) |
| DIP Financing - Borrowing | | 22,041 | | 22,551 | | 23,891 | | | 20,000 | 10,000 | | | 20,000 | 27,071 | 145,554 |
| **Ending Cash** | 20,500 | 7,229 | 51,284 | 1,000 | 30,944 | 1,000 | 38,056 | 706 | 3,167 | 817 | 22,945 | 10,595 | 834 | 2,778 | 2,778 |

Notes:

1) This financial analysis is to be used for planning purposes only. These are projections and as such make substantial use of estimates.

2) They are unaudited and there is no guarantee of material accuracy. These are NOT GAAP.

3) This report is based upon PPD (Per Patient Day) estimates. True results may differ materially from planned with respect to census and PPD cost.

**JT Care, LLC**
**Cash Flow Projections**

| Week ending | 2/23/2019 (1) | 3/2/2019 (2) | 3/9/2019 (3) | 3/16/2019 (4) | 3/23/2019 (5) | 3/30/2019 (6) | 4/6/2019 (7) | 4/13/2019 (8) | 4/20/2019 (9) | 4/27/2019 (10) | 5/4/2019 (11) | 5/11/2019 (12) | 5/18/2019 (13) | 5/25/2019 (14) | 14 Week Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CASH RECEIPTS** | | | | | | | | | | | | | | | |
| Collections | 103,500 | 103,500 | 103,500 | 80,500 | 80,500 | 80,500 | 84,000 | 84,000 | 84,000 | 84,000 | 84,000 | 84,000 | 84,000 | 84,000 | 1,224,000 |
| **Total Estimated Cash Receipts** | 103,500 | 103,500 | 103,500 | 80,500 | 80,500 | 80,500 | 84,000 | 84,000 | 84,000 | 84,000 | 84,000 | 84,000 | 84,000 | 84,000 | 1,224,000 |
| **CASH DISBURSEMENTS** | | | | | | | | | | | | | | | |
| **Operating Disbursements** | | | | | | | | | | | | | | | |
| Payroll | 27,500 | 100,000 | | 100,000 | | 100,000 | | 100,000 | | 73,000 | 27,000 | 73,000 | 27,000 | 73,000 | 700,500 |
| Supplies | 9,400 | 9,400 | 9,400 | 9,400 | 9,400 | 9,400 | 9,400 | 9,400 | 9,400 | 9,400 | 9,400 | 9,400 | 9,400 | 9,400 | 131,600 |
| Insurance - Medical and Dental | 15,556 | | | | | | | | 15,556 | 15,556 | | | | | 90,000 |
| Insurance - Liability | 2,778 | 2,778 | 2,778 | 2,778 | 2,778 | 2,778 | 2,778 | 2,778 | 2,778 | 2,778 | 2,778 | 2,778 | 2,778 | 2,778 | 55,500 |
| Union Dues/Healthcare/Pension | 8,000 | | | 18,500 | | | | 18,500 | | | | | 18,500 | | 32,000 |
| TM Management Fee | | 8,800 | | 8,805 | | 8,805 | | 8,000 | 8,820 | 8,820 | 8,000 | | 8,820 | | 52,869 |
| Health and Family Services-Bed Tax | 20,000 | | 20,000 | | | | 20,000 | | 20,000 | | | | 20,000 | | 100,000 |
| Rent | | | | | | | | | | | | | | | |
| Utilities | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 50,556 |
| Leases | 594 | 594 | 594 | | | | | | 594 | 594 | 594 | | 594 | 594 | 4,161 |
| Facility compliance | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 21,000 |
| Data processing | 3,333 | | | 3,333 | 3,333 | | | | 3,333 | | | 3,333 | 3,333 | | 13,333 |
| Maintenance | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 14,000 |
| Transactional Fees | 2,000 | 2,000 | | | | | | | | 2,000 | | | | | 6,000 |
| Miscellaneous Expense | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 10,500 |
| **Total Operating Disbursements** | 91,244 | 129,838 | 39,633 | 146,344 | 43,744 | 127,844 | 41,633 | 119,039 | 91,064 | 92,039 | 57,453 | 92,039 | 105,287 | 104,817 | 1,282,019 |
| **Other Disbursements** | | | | | | | | | | | | | | | |
| MidCap | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 15,556 |
| DIP costs and fees | | | | | | | | | | | | | | | |
| Professional fees | 14,444 | 5,556 | | 5,556 | | 5,556 | | | 5,556 | | | | 5,556 | | 42,222 |
| Trustee Fees | 13,000 | | 13,000 | | | | | | | | | | | | 26,000 |
| **Total Other Disbursements** | 28,556 | 6,667 | 14,111 | 6,667 | 1,111 | 6,667 | 1,111 | 1,111 | 6,667 | 1,111 | 1,111 | 1,111 | 6,667 | 1,111 | 83,778 |
| **Total Disbursements** | 119,800 | 136,505 | 53,744 | 153,010 | 44,856 | 134,510 | 42,744 | 120,150 | 97,731 | 93,150 | 58,564 | 93,150 | 111,953 | 105,928 | 1,365,796 |
| **Change for the Period** | (16,300) | (33,005) | 49,756 | (72,510) | 35,644 | (54,010) | 41,256 | (36,150) | (13,731) | (9,150) | 25,436 | (9,150) | (27,953) | (21,928) | (141,796) |
| Beginning Cash | 30,000 | 13,700 | 1,000 | 50,756 | 1,000 | 36,644 | 1,000 | 42,256 | 6,106 | 10,000 | 3,225 | 28,660 | 19,510 | 10,000 | |
| Liquidity before DIP Financing | 13,700 | (19,305) | 50,756 | (21,755) | 36,644 | (17,366) | 42,256 | 6,106 | (7,625) | (6,775) | (8,443) | 19,510 | (8,443) | (20,371) | (111,796) |
| DIP Financing - Borrowing | | 20,305 | | 22,755 | | 18,366 | | | 7,625 | 6,775 | 10,000 | | 10,000 | 23,149 | 116,574 |
| **Ending Cash** | 13,700 | 1,000 | 50,756 | 1,000 | 36,644 | 1,000 | 42,256 | 6,106 | - | - | 3,225 | 28,660 | 19,510 | 2,778 | 2,778 |

**Notes:**

1) This financial analysis is to be used for planning purposes only. These are projections and as such make substantial use of estimates.

2) They are unaudited and there is no guarantee of material accuracy. These are NOT GAAP.

3) This report is based upon PPD (Per Patient Day) estimates. True results may differ materially from planned with respect to census and PPD cost.

**KT Care, LLC**
**Cash Flow Projections**

| Week ending | 2/23/2019 | 3/2/2019 | 3/9/2019 | 3/16/2019 | 3/23/2019 | 3/30/2019 | 4/6/2019 | 4/13/2019 | 4/20/2019 | 4/27/2019 | 5/4/2019 | 5/11/2019 | 5/18/2019 | 5/25/2019 | 14 Week Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 |  |
| **CASH RECEIPTS** | | | | | | | | | | | | | | | |
| Collections | 107,500 | 107,500 | 107,500 | 83,500 | 83,500 | 83,500 | 87,000 | 87,000 | 87,000 | 87,000 | 87,000 | 87,000 | 87,000 | 87,000 | 1,269,000 |
| **Total Estimated Cash Receipts** | 107,500 | 107,500 | 107,500 | 83,500 | 83,500 | 83,500 | 87,000 | 87,000 | 87,000 | 87,000 | 87,000 | 87,000 | 87,000 | 87,000 | 1,269,000 |
| **CASH DISBURSEMENTS** | | | | | | | | | | | | | | | |
| *Operating Disbursements* | | | | | | | | | | | | | | | |
| Payroll | 58,000 | 105,000 |  | 105,000 |  | 105,000 |  | 105,000 |  | 78,000 | 27,000 | 78,000 | 27,000 | 78,000 | 766,000 |
| Supplies | 9,050 | 9,050 | 9,050 | 9,050 | 9,050 | 9,050 | 9,050 | 9,050 | 9,050 | 9,050 | 9,050 | 9,050 | 9,050 | 9,050 | 126,700 |
| Insurance - Medical and Dental | 15,556 |  |  |  | 15,556 |  |  |  | 15,556 |  |  |  |  | 15,556 | 90,000 |
| Insurance - Liability |  |  |  | 19,500 |  |  |  |  | 19,500 |  |  |  | 19,500 |  | 58,500 |
| Union Dues/Healthcare/Pension |  | 2,778 | 2,778 | 2,778 |  | 2,778 | 2,778 | 2,778 |  | 2,778 | 2,778 | 2,778 | 2,778 |  | 28,000 |
| TM Management Fee |  | 9,140 |  | 9,133 |  | 9,133 |  |  | 9,135 |  | 9,135 |  | 9,135 |  | 54,810 |
| Health and Family Services-Bed Tax | 7,000 |  |  |  | 7,000 |  |  |  | 7,000 |  |  |  | 7,000 |  | 28,000 |
| Rent |  |  |  |  |  |  |  |  |  |  |  |  |  |  | - |
| Utilities | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 50,556 |
| Leases | 594 |  | 594 |  | 594 |  | 594 |  | 594 |  | 594 |  | 594 |  | 4,161 |
| Facility compliance | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 21,000 |
| Data processing | 3,333 |  |  |  | 3,333 |  |  |  | 3,333 |  |  |  | 3,333 |  | 13,333 |
| Maintenance | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 14,000 |
| Transactional Fees |  | 2,500 |  |  |  |  | 2,500 |  |  |  | 2,500 |  |  |  | 7,500 |
| Miscellaneous Expense | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 10,500 |
| **Total Operating Disbursements** | 100,394 | 135,329 | 19,283 | 152,322 | 42,394 | 132,822 | 21,783 | 123,689 | 71,029 | 96,689 | 57,918 | 96,689 | 85,252 | 109,467 | 1,245,060 |
| *Other Disbursements* | | | | | | | | | | | | | | | |
| MidCap | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 15,556 |
| DIP costs and fees |  |  |  |  |  |  |  |  |  |  |  |  |  |  | - |
| Professional fees | 14,444 | 5,556 |  | 5,556 |  | 5,556 |  |  | 5,556 |  |  |  | 5,556 |  | 42,222 |
| Trustee Fees | 13,000 |  | 13,000 |  |  |  |  |  |  |  |  |  |  |  | 26,000 |
| **Total Other Disbursements** | 28,556 | 6,667 | 14,111 | 6,667 | 1,111 | 6,667 | 1,111 | 1,111 | 6,667 | 1,111 | 1,111 | 1,111 | 6,667 | 1,111 | 83,778 |
| **Total Disbursements** | 128,950 | 141,995 | 33,394 | 158,988 | 43,506 | 139,488 | 22,894 | 124,800 | 77,696 | 97,800 | 59,029 | 97,800 | 91,918 | 110,578 | 1,328,838 |
| **Change for the Period** | (21,450) | (34,495) | 74,106 | (75,488) | 39,994 | (55,988) | 64,106 | (37,800) | 9,304 | (10,800) | 27,971 | (10,800) | (4,918) | (23,578) | (59,838) |
| Beginning Cash | 30,469 | 9,019 | 1,000 | 75,106 | 1,000 | 40,994 | 1,000 | 65,106 | 27,306 | 16,610 | 810 | 28,780 | 17,980 | 13,062 | 30,469 |
| Liquidity before DIP financing | 9,019 | (25,476) | 75,106 | (383) | 40,994 | (14,994) | 65,106 | 27,306 | 36,610 | 5,810 | 28,780 | 17,980 | 13,062 | (10,516) | (29,369) |
| DIP Financing - Borrowing |  | 26,476 |  | 1,383 |  | 15,994 |  |  | (20,000) | (5,000) |  |  |  | 13,294 | 32,247 |
| **Ending Cash** | 9,019 | 1,000 | 75,106 | 1,000 | 40,994 | 1,000 | 65,106 | 27,306 | 16,610 | 810 | 28,780 | 17,980 | 13,062 | 2,778 | 2,778 |

Notes:

1) This financial analysis is to be used for planning purposes only. These are projections and as such make substantial use of estimates.

2) They are unaudited and there is no guarantee of material accuracy. These are NOT GAAP.

3) This report is based upon PPD (Per Patient Day) estimates. True results may differ materially from planned with respect to census and PPD cost.

**SV Care, LLC**
**Cash Flow Projections**

| Week ending | 2/23/2019 | 3/2/2019 | 3/9/2019 | 3/16/2019 | 3/23/2019 | 3/30/2019 | 4/6/2019 | 4/13/2019 | 4/20/2019 | 4/27/2019 | 5/4/2019 | 5/11/2019 | 5/18/2019 | 5/25/2019 | 14 Week Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | |
| **CASH RECEIPTS** | | | | | | | | | | | | | | | |
| Collections | 208,000 | 208,000 | 208,000 | 161,500 | 161,500 | 161,500 | 168,000 | 168,000 | 168,000 | 168,000 | 168,000 | 168,000 | 168,000 | 168,000 | 2,452,500 |
| **Total Estimated Cash Receipts** | 208,000 | 208,000 | 208,000 | 161,500 | 161,500 | 161,500 | 168,000 | 168,000 | 168,000 | 168,000 | 168,000 | 168,000 | 168,000 | 168,000 | 2,452,500 |
| **CASH DISBURSEMENTS** | | | | | | | | | | | | | | | |
| **Operating Disbursements** | | | | | | | | | | | | | | | |
| Payroll | 114,000 | 215,000 | | 215,000 | | 215,000 | | 215,000 | | 161,000 | 54,000 | 161,000 | 54,000 | 161,000 | 1,565,000 |
| Supplies | 19,250 | 19,250 | 19,250 | 19,250 | 19,250 | 19,250 | 19,250 | 19,250 | 19,250 | 19,250 | 19,250 | 19,250 | 19,250 | 19,250 | 269,500 |
| Insurance – Medical and Dental | 15,556 | 2,778 | 2,778 | 2,778 | 15,556 | 2,778 | 2,778 | 2,778 | 15,556 | 2,778 | 2,778 | 2,778 | 2,778 | 15,556 | 90,000 |
| Insurance – Liability | | | | 35,000 | | | | | 35,000 | | | | 35,000 | | 105,000 |
| Union Dues/Healthcare/Pension | 9,000 | | | | 9,000 | | | | 9,000 | | | | 9,000 | | 36,000 |
| TM Management Fee | | 17,684 | | 17,664 | | 17,664 | | | 17,640 | | 17,640 | | 17,641 | | 105,593 |
| Health and Family Services-Bed Tax | 31,000 | | 31,000 | | | | 31,000 | | 31,000 | | | | 31,000 | | 155,000 |
| Rent | | | | | | | | | | | | | | | |
| Utilities | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 50,556 |
| Leases | 594 | | 594 | | 594 | | 594 | | 594 | | 594 | | 594 | | 4,161 |
| Facility compliance | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 28,000 |
| Data processing | 3,333 | | | | 3,333 | | | | 3,333 | | | | 3,333 | | 13,333 |
| Maintenance | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 21,000 |
| Transactional fees | | 2,500 | | | | | 2,500 | | | | 2,500 | | | | 7,500 |
| Miscellaneous Expense | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 14,000 |
| **Total Operating Disbursements** | 200,844 | 265,323 | 61,733 | 297,803 | 55,844 | 262,803 | 64,233 | 245,139 | 139,484 | 191,139 | 104,873 | 191,139 | 180,707 | 203,917 | 2,464,982 |
| **Other Disbursements** | | | | | | | | | | | | | | | |
| MidCap | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 15,556 |
| DIP costs and fees | 14,444 | 5,556 | | 5,556 | | 5,556 | | | 5,556 | | | | 5,556 | | 42,222 |
| Professional fees | 23,500 | | 23,500 | | | | | | | | | | | | 47,000 |
| Trustee Fees | | | | | | | | | | | | | | | |
| **Total Other Disbursements** | 39,056 | 6,667 | 24,611 | 6,667 | 1,111 | 6,667 | 1,111 | 1,111 | 6,667 | 1,111 | 1,111 | 1,111 | 6,667 | 1,111 | 104,778 |
| **Total Disbursements** | 239,900 | 271,990 | 86,344 | 304,470 | 56,956 | 269,470 | 65,344 | 246,250 | 146,151 | 192,250 | 105,984 | 192,250 | 187,373 | 205,028 | 2,569,760 |
| **Change for the Period** | (31,900) | (63,990) | 121,656 | (142,970) | 104,544 | (107,970) | 102,656 | (78,250) | 21,849 | (24,250) | 62,016 | (24,250) | (19,373) | (37,028) | (117,260) |
| Beginning Cash | 45,000 | 13,100 | 1,000 | 122,656 | 1,000 | 105,544 | 1,000 | 103,656 | 20,406 | 32,255 | 3,005 | 65,020 | 40,770 | 21,397 | 45,000 |
| Liquidity before DIP Financing | 13,100 | (50,890) | 122,656 | (20,314) | 105,544 | (2,425) | 103,656 | 25,406 | 42,255 | 8,005 | 65,020 | 40,770 | 21,397 | (15,631) | (72,260) |
| DIP Financing - Borrowing | | 51,890 | | 21,314 | | 3,425 | | (5,000) | (10,000) | (5,000) | | | | 18,409 | 75,038 |
| **Ending Cash** | 13,100 | 1,000 | 122,656 | 1,000 | 105,544 | 1,000 | 103,656 | 20,406 | 32,255 | 3,005 | 65,020 | 40,770 | 21,397 | 2,778 | 2,778 |

Notes:
1) This financial analysis is to be used for planning purposes only. These are projections and as such make substantial use of estimates.
2) They are unaudited and there is no guarantee of material accuracy. These are NOT GAAP.
3) This report is based upon PPD (Per Patient Day) estimates. True results may differ materially from planned with respect to census and PPD cost.

**TN Care, LLC**
**Cash Flow Projections**

| Week ending | 2/23/2019 | 3/2/2019 | 3/9/2019 | 3/16/2019 | 3/23/2019 | 3/30/2019 | 4/6/2019 | 4/13/2019 | 4/20/2019 | 4/27/2019 | 5/4/2019 | 5/11/2019 | 5/18/2019 | 5/25/2019 | 14 Week Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | |
| **CASH RECEIPTS** | | | | | | | | | | | | | | | |
| Collections | 137,500 | 137,500 | 137,500 | 107,000 | 107,000 | 107,000 | 111,500 | 111,500 | 111,500 | 111,500 | 111,500 | 111,500 | 111,500 | 111,500 | 1,625,500 |
| **Total Estimated Cash Receipts** | 137,500 | 137,500 | 137,500 | 107,000 | 107,000 | 107,000 | 111,500 | 111,500 | 111,500 | 111,500 | 111,500 | 111,500 | 111,500 | 111,500 | 1,625,500 |
| **CASH DISBURSEMENTS** | | | | | | | | | | | | | | | |
| **Operating Disbursements** | | | | | | | | | | | | | | | |
| Payroll | 31,000 | 125,000 | | 125,000 | | 125,000 | | 125,000 | | 94,000 | 31,000 | 94,000 | 31,000 | 94,000 | 875,000 |
| Supplies | 21,900 | 21,900 | 21,900 | 21,900 | 21,900 | 21,900 | 21,900 | 21,900 | 21,900 | 21,900 | 21,900 | 21,900 | 21,900 | 21,900 | 306,600 |
| Insurance - Medical and Dental | 15,556 | 2,778 | 2,778 | 2,778 | 15,556 | 2,778 | 2,778 | 2,778 | 15,556 | 2,778 | 2,778 | 2,778 | 2,778 | 15,556 | 90,000 |
| Insurance - Liability | | | | 65,000 | | | | | 65,000 | | | | 65,000 | | 195,000 |
| Union Dues/Healthcare/Pension | 7,000 | | | | 7,000 | | | | 7,000 | | | | 7,000 | | 28,000 |
| TM Management Fee | | 11,690 | | 11,703 | | 11,703 | | | 11,708 | | 11,708 | | 11,708 | | 70,219 |
| Health and Family Services-Bed Tax | 14,000 | | 14,000 | | | | 14,000 | | 14,000 | | | | 14,000 | | 70,000 |
| Rent | | | | | | | | | | | | | | | |
| Utilities | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 50,556 |
| Leases | 594 | | 594 | | 594 | | 594 | | 594 | | 594 | | 594 | | 4,161 |
| Facility compliance | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 21,000 |
| Data processing | 3,333 | | | | 3,333 | | | | 3,333 | | | | 3,333 | | 13,333 |
| Maintenance | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 14,000 |
| Transactional Fees | | 2,000 | | | | | 2,000 | | | | 2,000 | | | | 6,000 |
| Miscellaneous Expense | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 14,000 |
| **Total Operating Disbursements** | 100,494 | 170,479 | 46,383 | 233,492 | 55,494 | 168,492 | 48,383 | 156,789 | 146,202 | 125,789 | 77,091 | 125,789 | 164,424 | 138,567 | 1,757,669 |
| **Other Disbursements** | | | | | | | | | | | | | | | |
| MidCap | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 15,556 |
| DIP costs and fees | | | | | | | | | | | | | | | |
| Professional fees | 14,444 | 5,556 | | 5,556 | | 5,556 | | | 5,556 | | | | 5,556 | | 42,222 |
| Trustee Fees | 21,000 | | 21,000 | | | | | | | | | | | | 42,000 |
| **Total Other Disbursements** | 36,556 | 6,667 | 22,111 | 6,667 | 1,111 | 6,667 | 1,111 | 1,111 | 6,667 | 1,111 | 1,111 | 1,111 | 6,667 | 1,111 | 99,778 |
| **Total Disbursements** | 137,050 | 177,146 | 68,494 | 240,159 | 56,606 | 175,159 | 49,494 | 157,900 | 152,869 | 126,900 | 78,202 | 126,900 | 171,091 | 139,678 | 1,857,647 |
| **Change for the Period** | 450 | (39,646) | 69,006 | (133,159) | 50,394 | (68,159) | 62,006 | (46,400) | (41,369) | (15,400) | 33,298 | (15,400) | (59,591) | (28,178) | (232,147) |
| Beginning Cash | 27,245 | 27,695 | 1,000 | 70,006 | 1,000 | 61,394 | 4,077 | 66,083 | 19,683 | 18,314 | 22,914 | 56,213 | 60,813 | 1,222 | 27,245 |
| Liquidity before DIP financing | 27,695 | (11,951) | 70,006 | (63,153) | 51,394 | (6,764) | 66,083 | 19,683 | (21,686) | 2,914 | 56,213 | 40,813 | 1,222 | (26,956) | (204,902) |
| DIP Financing - Borrowing | | 12,951 | | 64,153 | 10,000 | 10,842 | | | 40,000 | 20,000 | | 20,000 | | 29,734 | 207,679 |
| **Ending Cash** | 27,695 | 1,000 | 70,006 | 1,000 | 61,394 | 4,077 | 66,083 | 19,683 | 18,314 | 22,914 | 56,213 | 60,813 | 1,222 | 2,778 | 2,778 |

**Notes:**
1) This financial analysis is to be used for planning purposes only. These are projections and as such make substantial use of estimates.
2) They are unaudited and there is no guarantee of material accuracy. These are NOT GAAP.
3) This report is based upon PPD (Per Patient Day) estimates. True results may differ materially from planned with respect to census and PPD cost.

**WCT Care, LLC**
**Cash Flow Projections**

| Week ending | 2/23/2019 | 3/2/2019 | 3/9/2019 | 3/16/2019 | 3/23/2019 | 3/30/2019 | 4/6/2019 | 4/13/2019 | 4/20/2019 | 4/27/2019 | 5/4/2019 | 5/11/2019 | 5/18/2019 | 5/25/2019 | 14 Week Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | |
| **CASH RECEIPTS** | | | | | | | | | | | | | | | |
| Collections | 96,500 | 96,500 | 96,500 | 75,000 | 75,000 | 75,000 | 78,000 | 78,000 | 78,000 | 78,000 | 78,000 | 78,000 | 78,000 | 78,000 | 1,138,500 |
| **Total Estimated Cash Receipts** | 96,500 | 96,500 | 96,500 | 75,000 | 75,000 | 75,000 | 78,000 | 78,000 | 78,000 | 78,000 | 78,000 | 78,000 | 78,000 | 78,000 | 1,138,500 |
| **CASH DISBURSEMENTS** | | | | | | | | | | | | | | | |
| **Operating Disbursements** | | | | | | | | | | | | | | | |
| Payroll | 22,000 | 125,000 | | 125,000 | | 125,000 | | 125,000 | | 102,000 | 23,000 | 102,000 | 23,000 | 102,000 | 874,000 |
| Supplies | 7,350 | 7,350 | 7,350 | 7,350 | 7,350 | 7,350 | 7,350 | 7,350 | 7,350 | 7,350 | 7,350 | 7,350 | 7,350 | 7,350 | 102,900 |
| Insurance - Medical and Dental | 15,556 | 2,778 | 2,778 | 2,778 | 15,556 | 2,778 | 2,778 | 2,778 | 15,556 | 2,778 | 2,778 | 2,778 | 2,778 | 15,556 | 90,000 |
| Insurance - Liability | | | | 24,000 | | | | | 24,000 | | | | 24,000 | | 72,000 |
| Union Dues/Healthcare/Pension | 7,000 | | | | 7,000 | | | | 7,000 | | | | 7,000 | | 28,000 |
| TM Management Fee | | 8,204 | | 8,203 | | 8,203 | | | 8,190 | | 8,190 | | 8,190 | | 49,181 |
| Health and Family Services-Bed Tax | 18,000 | | 18,000 | | | | 18,000 | | 18,000 | | | | 18,000 | | 90,000 |
| Rent | | | | | | | | | | | | | | | |
| Utilities | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 3,611 | 50,556 |
| Leases | 594 | | 594 | | 594 | | 594 | | 594 | | 594 | | 594 | | 4,161 |
| Facility compliance | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 21,000 |
| Data processing | 3,333 | | | | 3,333 | | | | 3,333 | | | | 3,333 | | 13,333 |
| Maintenance | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 14,000 |
| Transactional Fees | | 2,000 | | | | | 2,000 | | | | 2,000 | | | | 6,000 |
| Miscellaneous Expense | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 10,500 |
| **Total Operating Disbursements** | 80,694 | 152,193 | 35,583 | 174,192 | 40,694 | 150,192 | 37,583 | 141,989 | 90,884 | 118,989 | 50,773 | 118,989 | 101,107 | 131,767 | 1,425,630 |
| **Other Disbursements** | | | | | | | | | | | | | | | |
| MedCap | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 1,111 | 15,556 |
| DIP costs and fees | | | | | | | | | | | | | | | |
| Professional fees | 14,444 | 5,556 | | 5,556 | | 5,556 | | | 5,556 | | | | 5,556 | | 42,222 |
| Trustee Fees | 12,500 | | 12,500 | | | | | | | | | | | | 25,000 |
| **Total Other Disbursements** | 28,056 | 6,667 | 13,611 | 6,667 | 1,111 | 6,667 | 1,111 | 1,111 | 6,667 | 1,111 | 1,111 | 1,111 | 6,667 | 1,111 | 82,778 |
| **Total Disbursements** | 108,750 | 158,860 | 49,194 | 180,859 | 41,806 | 156,859 | 38,694 | 143,100 | 97,551 | 120,100 | 51,884 | 120,100 | 107,773 | 132,878 | 1,508,408 |
| **Change for the Period** | (12,250) | (62,360) | 47,306 | (105,859) | 33,194 | (81,859) | 39,306 | (65,100) | (19,551) | (42,100) | 26,116 | (42,100) | (29,773) | (54,878) | (369,908) |
| Beginning Cash | 27,245 | 14,995 | 1,000 | 48,306 | 1,000 | 34,194 | 1,000 | 50,306 | 206 | 655 | 13,555 | 39,670 | 77,570 | 7,797 | 27,245 |
| Liquidity before DIP financing | 14,995 | (47,365) | 48,306 | (57,553) | 34,194 | (47,664) | 40,306 | (14,794) | (19,345) | (41,445) | 39,670 | (2,430) | 47,797 | (47,081) | (342,663) |
| DIP Financing - Borrowing | | 48,365 | | 58,553 | | 48,664 | 10,000 | 15,000 | 20,000 | 55,000 | | 80,000 | (40,000) | 49,859 | 345,441 |
| **Ending Cash** | 14,995 | 1,000 | 48,306 | 1,000 | 34,194 | 1,000 | 50,306 | 206 | 655 | 13,555 | 39,670 | 77,570 | 7,797 | 2,778 | 2,778 |

**Notes:**

1) This financial analysis is to be used for planning purposes only. These are projections and as such make substantial use of estimates.

2) They are unaudited and there is no guarantee of material accuracy. These are NOT GAAP.

3) This report is based upon PPD (Per Patient Day) estimates. True results may differ materially from planned with respect to census and PPD cost.